Darin E. DALTON, Appellant,

v.

The STATE of Texas, Appellee.

No. 2–93–437–CR.

Court of Appeals of Texas,
Fort Worth.

May 11, 1995.

Earl R. Waddell, III, Fort Worth, for appellant.

Tim Curry, Criminal Dist. Atty., Betty Marshall and Charles M. Mallin, Asst. Chiefs of Appellate Section; Edward L. Wilkinson, Greg Pipes, Lance Evans, Asst. Dist. Attys., Fort Worth, for appellee.

Before LATTIMORE and DAY, JJ.

## OPINION

LATTIMORE, Justice.

Appellant Darin E. Dalton was convicted by a jury of the offense of aggravated sexual assault. *See* TEX.PENAL CODE ANN. § 22.021 (Vernon 1994). The jury assessed punishment at life confinement in the Institutional Division of the Texas Department of Criminal Justice. In seven points of error, Dalton contends the trial court's judgment is void ab

1. The complainant used a pseudonym to protect her identity.

2. The term "count" is used to charge the offense itself, whereas a "paragraph" is a portion of the count that charges a method of committing the

initio, there is insufficient evidence to support the jury's verdict, and the trial court's charge erroneously included an instruction on State parole laws.

We reform the judgment of the trial court and affirm as reformed.

Shortly after midnight on February 19, 1992, the complainant, Mary Smith,[1] awoke to find a man lying next to her in bed. That man, later identified as Darin Dalton, forced Smith to engage in various acts of oral, anal and vaginal sexual intercourse. Fingerprint analysis and DNA testing on semen residue found at the scene identified Dalton as the assailant. Dalton was subsequently charged by indictment with aggravated sexual assault. The indictment also included one enhancement paragraph for a prior aggravated sexual assault conviction. The jury found Dalton guilty of the alleged offense and assessed punishment at life confinement.

▋ In his first, second, and third points of error, Dalton complains that the trial court erred in submitting to the jury a general verdict on aggravated sexual assault, when the indictment charged him with three separate "counts" of the same offense. Dalton argues the general verdict is void ab initio and cannot form the basis of the trial court's judgment. For this reason, Dalton believes the trial court should have instructed the jury to return separate verdicts on each "count" listed in the indictment. We disagree.

▋ The State concedes that it improperly labeled "paragraphs" as "counts" in the indictment.[2] Fortunately for the State, the substance of the allegation determines its character as a "count" or "paragraph," not the terminology used. *See Gahl v. State,* 721 S.W.2d 888, 895 (Tex.App.—Dallas 1986, pet. ref'd). We will, therefore, address the different allegations of manner and means of committing the offense of aggravated sexual assault as "paragraphs" when appropriate.

offense. *Easter v. State,* 867 S.W.2d 929, 939 (Tex.App.—Waco 1993, pet. ref'd); *Renfro v. State,* 827 S.W.2d 532, 535 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd).

In separate paragraphs, Dalton is charged by indictment with the aggravated sexual assault of Mary Smith by three methods: (1) engaging in vaginal intercourse, (2) oral copulation, and (3) digital penetration. At the guilt-innocence phase of the trial, the court instructed the jury on the law concerning these three separate methods of committing aggravated sexual assault.[3] The jury then returned a general verdict of guilty.

 The law is clear that alternate pleading of differing methods of committing one offense may be charged in one indictment. *Kitchens v. State*, 823 S.W.2d 256, 258 (Tex.Crim.App.1991), *cert. denied*, 504 U.S. 958, 112 S.Ct. 2309, 119 L.Ed.2d 230 (1992); *Marquez v. State*, 725 S.W.2d 217, 239 (Tex. Crim.App.), *cert. denied*, 484 U.S. 872, 108 S.Ct. 201, 98 L.Ed.2d 152 (1987); *Quinones v. State*, 592 S.W.2d 933 (Tex.Crim.App.), *cert. denied*, 449 U.S. 893, 101 S.Ct. 256, 66 L.Ed.2d 121 (1980). And although the indictment may allege the differing methods of committing the offense in the conjunctive, it is proper for the jury to be charged in the disjunctive. *Kitchens*, 823 S.W.2d at 258. It is likewise appropriate, where alternative theories of committing the same offense are submitted to the jury in the disjunctive, for the jury to return a general verdict if the evidence is sufficient to support a finding under any of the theories submitted. *Aguirre v. State*, 732 S.W.2d 320, 326 (Tex. Crim.App. [Panel Op.] 1987) (op. on reh'g); TEX.CODE CRIM.PROC.ANN. art. 37.07, § 1(a) (Vernon 1981).

In the instant case, the jury's general verdict merely represents one conviction for a single offense, not multiple convictions for different offenses. Likewise, the record reflects that the assessed punishment of life imprisonment was based on a single offense of aggravated sexual assault. Error does appear, however, in the trial court's judgment, which does not properly reflect the findings of the jury. The judgment details three separate convictions for "counts" one, two, and three, as listed in the indictment. We must, therefore, reform the judgment to reflect the jury's verdict. *See Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex.Crim.App. 1993); *Aguirre*, 732 S.W.2d at 327; TEX. R.APP.P. 80(b)(2).

Before reformation may be accomplished, we must decide which "counts" should be deleted from the judgment. Since the indictment, tracked by the judgment, alleges three paragraphs, or methods of committing the same offense, we will uphold Dalton's conviction based on the first "count." *See Ex parte Drake*, 883 S.W.2d 213, 214 (Tex.Crim.App. 1994). Accordingly, we reform the judgment of the trial court to reflect Dalton's sole conviction, and corresponding punishment, for one count of aggravated sexual assault, to wit: "BY INSERTING THE PENIS OF SAID DEFENDANT INTO THE FEMALE SEXUAL ORGAN OF MARY SMITH...." Accordingly, Dalton's conviction for "counts" two and three are deleted in the judgment. Points of error one, two, and three are overruled.

 In his fourth and fifth points of error, Dalton contends there is insufficient

---

3. The instruction read, in pertinent part:
 Now, if you find from the evidence beyond a reasonable doubt that on or about the 19th day of February, 1992, in Tarrant County, Texas, the Defendant, Darin E. Dalton, did then and there intentionally or knowingly cause the penetration of the female sexual organ of Mary Smith ... without the consent of Mary Smith, by compelling Mary Smith to submit or participate by the use of physical force or violence, or by threatening to use force or violence against Mary Smith, and Mary Smith believed that the Defendant had the present ability to execute said threat, and the Defendant by acts or words placed Mary Smith in fear that death or serious bodily injury would be imminently inflicted on Mary Smith, and the Defendant by

 acts or words occurring in the presence of Mary Smith threatened to cause the death of or serious bodily injury to Mary Smith;
 OR
 ....
 [I]ntentionally or knowingly cause the penetration of the mouth of Mary Smith by the sexual organ of the Defendant without the consent of Mary Smith....
 OR
 ....
 [I]ntentionally or knowingly cause the penetration of the female sexual organ of Mary Smith by inserting the finger of said Defendant into the female sexual organ of Mary Smith without the consent of Mary Smith....

evidence to support the jury's verdict.[4] In reviewing the sufficiency of the evidence to support a conviction, the evidence is viewed in the light most favorable to the verdict. *Narvaiz v. State*, 840 S.W.2d 415, 423 (Tex. Crim.App.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). The critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Moreno v. State,* 755 S.W.2d 866, 867 (Tex.Crim.App. 1988).

"This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979).

 The sufficiency of the evidence is a question of law. The issue on appeal is not whether we as a court believe the State's evidence or believe that the defense's evidence outweighs the State's evidence. *See Matson v. State,* 819 S.W.2d 839, 846 (Tex. Crim.App.1991); *Wicker v. State,* 667 S.W.2d 137, 143 (Tex.Crim.App.), *cert. denied,* 469 U.S. 892, 105 S.Ct. 268, 83 L.Ed.2d 204 (1984). The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson,* 819 S.W.2d at 846. Contrary to the position taken by the dissent, we believe the evidence

sufficient to support the jury's finding that Dalton placed Mary Smith in fear of death or serious bodily injury *and* that Dalton threatened Mary Smith with death or serious bodily injury.

The evidence adduced at trial showed that around 9:00 p.m. on the evening of February 18, 1992, Mary Smith went to sleep, only to be awakened later that night by the presence of a strange man in her bedroom. Smith testified that when she initially woke up, she saw the silhouette of someone lying next to her. When she inquired of the stranger's name, he simply told her "to be quiet." Smith then asked him how he got in to her apartment, to which the man responded that the front door was open.[5] The stranger, later identified as Darin Dalton, then told Smith to get out of bed. When Smith complied, Dalton grabbed her nightgown and left arm and directed her into an adjoining bathroom. Smith testified that she felt "something cold" against her back, but did not know what the object was. Once in the bathroom, Dalton closed the door and told Smith to take off her nightgown. Because Dalton was stronger than her, Smith did not resist and complied with his demands. Dalton began kissing Smith and instructed her to reciprocate, warning her that she "better like it or he was going to hurt [her]." Dalton then ordered Smith to sit on the commode and, while standing over her, instructed her to put his penis in her mouth. He again warned her that if she failed to comply, he

---

**4.** In this case, the indictment alleged that Dalton committed the act of aggravated sexual assault in the conjunctive—that he placed Mary Smith in fear of death or serious bodily injury *and* that he threatened her with death or serious bodily injury. The charge could have properly alleged the acts in the disjunctive—place Mary Smith in fear of *or* threatened her with death or serious bodily injury. *See Fee v. State,* 841 S.W.2d 392 (Tex. Crim.App.1992). However, the jury was instructed to find Dalton guilty if they found from the evidence beyond a reasonable doubt that Dalton committed sexual assault and "[Dalton] by acts or words placed Mary Smith in fear that death or serious bodily injury would be imminently inflicted on Mary Smith, *and* [Dalton] by acts or words occurring in the presence of Mary Smith threatened to cause the death or serious bodily injury to Mary Smith; ..." [Emphasis added.]

The trial court gave both the State and Dalton an opportunity to object to the charge. The

State accepted the charge as submitted. As the dissent correctly points out, when the court's charge to the jury is otherwise correct but places a higher burden on the State, failure to object constitutes an acceptance of that higher burden by the State. *Benson v. State,* 661 S.W.2d 708, 715 (Tex.Crim.App.1982) (op. on reh'g), *cert. denied,* 467 U.S. 1219, 104 S.Ct. 2667, 81 L.Ed.2d 372 (1984). *See also Fisher v. State,* 887 S.W.2d 49 (Tex.Crim.App.1994). By not objecting to the charge, the State unnecessarily assumed the burden of proving all of the acts alleged in the application paragraph of the court's charge. *Nickerson v. State,* 782 S.W.2d 887 (Tex.Crim. App.1990). Therefore, the issue on appeal is whether the State met this higher burden beyond a reasonable doubt.

**5.** Smith knew this was not true because she had locked the front door before going to bed.

was going to hurt her. Smith complied until Dalton ejaculated in her mouth, at which point she felt nauseated. Dalton also inserted his finger into Smith's vagina, and when Smith protested, explaining that she was a virgin, Dalton called her a "liar." He then told her to perform the same act on herself, and warned her again that if he found out she was not complying, he was going to do it himself. Smith testified to being "horrified" and "scared, and I knew that if I didn't do what he said, that he could hurt me, and I didn't know if I was going to get out of there alive."

Next, Dalton wrapped the nightgown over Smith's eyes, returned her to the bedroom, and instructed her to lie down on the bed and spread her legs. When Smith refused to comply, Dalton climbed on top of her, forced her legs apart with his hands, and penetrated her vagina with his penis and sodomized her. Afterwards, Dalton took Smith back to the bathroom, where he instructed her to take a shower and clean herself "really good," cautioning that if she did not, "he was going to do it himself." As he left, Dalton also stated that "if he saw any cops that he was going to come back and get" her "and it was going to be worse." Smith testified that during the entire ordeal, she believed "that if I didn't do what [Dalton] asked me, that I wasn't ever going to come out alive or I could be injured physically." A subsequent medical exam revealed bruising of Smith's abdomen, as well as swelling, bruising, and tearing of Smith's vagina and anus.

To determine the presence of the aggravating nature of an offense, a trier of fact is entitled to consider not only the injuries actually inflicted and the express verbal threats made by a defendant, but also his objective conduct, *i.e.*, his acts, words, or deeds. *Elkins v. State*, 822 S.W.2d 780, 783 (Tex.App.—Houston [14th Dist.] 1992, pet. ref'd). In fact, it is not necessary that a threat be communicated verbally, *id.*, nor is it necessary to show that the defendant could have inflicted serious bodily injury, but did not. *Grunsfeld v. State*, 813 S.W.2d 158, 162 (Tex.App.—Dallas 1991), *rev'd on other grounds*, 843 S.W.2d 521 (Tex.Crim.App. 1992).

While conceding the sufficiency of the evidence to prove that Dalton placed Mary Smith in fear of death or serious bodily injury, the dissent argues that the State failed to meet its higher burden of proving that Dalton also threatened Mary Smith with death or serious bodily injury. After attempting to discount the quantum of evidence contained in the record, the dissent concludes that there must be evidence of a threat to cause death or serious bodily injury, whether that threat be verbal or by actions. Thus, the dissent argues there is simply insufficient evidence in the record to permit any rational trier of fact to find the necessary elements of aggravation. Implicit in this argument is the notion that the "acts or words" that give rise to a victim's fear of imminent death or serious bodily injury under TEX.PENAL CODE ANN. § 22.021(a)(2)(A)(ii) cannot be the same "acts or words" that constitute a threat of death or serious bodily injury under TEX.PENAL CODE ANN. § 22.021(a)(2)(A)(iii). For obvious reasons, we decline to hold that certain "acts or words" are mutually exclusive to proving different manners and means of committing a particular offense. Instead, we simply conclude that after reviewing the evidence in the light most favorable to the verdict, any rational trier of fact could find that Dalton threatened Smith with death or serious bodily injury *and* that Smith was placed in fear of death or serious bodily injury. Our conclusion is supported by the record which shows that Dalton entered Smith's apartment in the middle of the night, that he forced Smith to engage in non-consensual acts of sexual intercourse, that Dalton twice threatened to "hurt" Smith if she did not comply, that Dalton possessed physical strength superior to Smith's, that at one point Smith felt something "cold" at her back, and that Smith testified to being in fear for her life and physical wellbeing. The fact that Smith never saw a weapon and that Dalton never threatened to "kill" Smith does not alter our conclusion. Points of error four and five are overruled.

In his sixth point of error, Dalton contends there is insufficient evidence to support the jury's verdict that he inserted his

penis into Smith's vagina, as alleged in "count" one of the indictment.

Smith testified that while she was lying on the bed, Dalton forced her legs apart and did indeed penetrate her vagina with his penis. In fact, after Dalton completed his assault, he instructed Smith to get into the shower and "clean [herself] good inside." Later that same day, Smith was examined at a local emergency room. Smith reported to the nurse on duty that she was forced to engage in both "oral and vaginal intercourse" with her assailant. Smith also reported experiencing pain upon penetration of "the vaginal and rectal area[s]," and that her assailant ejaculated "both orally and vaginally." A subsequent physical examination revealed that Smith's labia majora and minora (the outer and inner folds of the vulva) were swollen and bruised, and though the lateral edges of the hymen were intact, a "good size" tear was evident at the posterior fourchette (a membrane that connects the labia minora). Smith's vaginal area was swollen and very tender and evidenced her virginity.

Based on the testimony of the complainant, which was confirmed by the physical examination, we hold the evidence sufficient to support the jury's finding that Dalton penetrated Smith's vagina with his penis. Point of error six is overruled.

■ In his seventh point of error, Dalton complains that his due process rights were violated when the trial court included an instruction on state parole laws in the jury charge. The instruction at issue, which tracks the mandatory language found in TEX. CODE CRIM.PROC.ANN. art. 37.07, § 4(a) (Vernon Supp.1995), reads as follows:

> You may consider the existence of the parole and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

Dalton argues the instruction is improper because it first tells the jury to consider the

existence of parole laws and good conduct time, and then mandates that the jury not apply those laws to this particular defendant.[6]

■ This particular argument was expressly rejected in *Boudreaux v. State,* 723 S.W.2d 230, 232 (Tex.App.—Beaumont 1986, no pet.). In *Boudreaux,* the Beaumont Court of Appeals recognized that intermediate appellate courts must presume that the jury followed the trial court's instruction. *Id.* To conclude otherwise would undermine the integrity of the individual jurors and the jury system itself. *See Patton v. State,* 717 S.W.2d 772, 781 (Tex.App.—Fort Worth 1986), *vacated and remanded on other grounds,* 761 S.W.2d 1 (Tex.Crim.App.1988). Hence, we find no merit in Dalton's argument and hold that TEX.CODE CRIM.PROC.ANN. art. 37.07, § 4(a) does not violate Dalton's due process rights. *Muhammad v. State,* 830 S.W.2d 953, 955–56 (Tex.Crim.App.1992). Point of error seven is overruled.

Because of the error contained in the trial court's judgment, we reform the judgment to delete the convictions under counts two and three for aggravated sexual assault. Punishment remains unchanged.

As reformed, the judgment of the trial court is affirmed.

PAUL S. COLLEY, J. (Retired), Sitting by Assignment.

DAUPHINOT and LIVINGSTON, JJ., dissent.

DAUPHINOT, Justice, dissenting.

This court has found the evidence sufficient to support appellant's conviction of aggravated sexual assault. I cannot agree.

The indictment charges aggravated sexual assault of Mary Smith (pseudonym) by:

COMPELLING MARY SMITH TO SUBMIT AND PARTICIPATE BY THE USE OF PHYSICAL FORCE AND VIOLENCE AND BY THREATENING TO USE FORCE AND VIOLENCE AGAINST MARY SMITH AND MARY

---

**6.** Dalton likens the instruction to telling a person "not to think of an elephant," which he then says

makes it impossible to avoid the immediate mental image of an elephant.

SMITH BELIEVED THAT THE DEFENDANT HAD THE PRESENT ABILITY TO EXECUTE SAID THREAT, AND THE DEFENDANT BY ACTS AND WORDS PLACED MARY SMITH IN FEAR THAT DEATH AND SERIOUS BODILY INJURY WOULD BE IMMINENTLY INFLICTED ON MARY SMITH AND THE DEFENDANT BY ACTS AND WORDS OCCURRING IN THE PRESENCE OF MARY SMITH THREATENED TO CAUSE THE DEATH OF AND SERIOUS BODILY INJURY TO MARY SMITH....

In three application paragraphs that tracked the three paragraphs (erroneously designated as counts in the indictment) alleging three different manners and means of committing sexual assault but the same manner and means of committing the aggravating elements, the trial court charged the jury that they would convict appellant of aggravated sexual assault in a general verdict if they found any of the three methods of committing sexual assault of Mary Smith and they also found:

> [T]he Defendant by acts or words placed Mary Smith in fear that death or serious bodily injury would be imminently inflicted on Mary Smith, *and* the Defendant by acts or words occurring in the presence of Mary Smith threatened to cause the death of or serious bodily injury to Mary Smith.... [Emphasis Added.]

The jury, therefore, was required to find not only that appellant compelled Mary Smith to submit or participate by the use of physical force or violence, or by threatening to use force or violence against Mary Smith, which threat Mary Smith believed appellant had the present ability to execute (*i.e.,* the elements of the offense that made the requisite penetration of the female sexual organ of Mary Smith nonconsensual), but also was compelled to find additional elements to elevate the offense to an aggravated sexual assault. The additional elements are that appellant, by acts or words:

1. placed Mary Smith in fear that death would be inflicted on Mary Smith,

*OR*

placed Mary Smith in fear that serious bodily injury would be imminently inflicted on Mary Smith,

*AND*

2. threatened to cause the death of Mary Smith,

*OR*

threatened to cause serious bodily injury to Mary Smith.

Tex.Penal Code Ann. § 22.021(a) (Vernon 1994) provides that sexual assault is aggravated if the defendant, by acts or words, places the victim in fear that death, serious bodily injury, or kidnapping will be imminently inflicted on any person *OR* if the defendant, by acts or words occurring in the presence of the victim, threatens to cause the death, serious bodily injury, or kidnapping of any person.

The law is well settled, however, that if the State increases its burden by pleading more than the statute requires that it prove in order to secure a conviction, the State is bound by its pleading. *Fisher v. State,* 887 S.W.2d 49, 57 (Tex.Crim.App.1994); *Easley v. State,* 319 S.W.2d 325, 326 (Tex.Crim.App. 1959). Even when the law permits the elements that have been pled conjunctively to be charged disjunctively in the application paragraph of the court's charge to the jury, if the jury is charged conjunctively without objection from the State, sufficiency of the evidence must be determined in light of the elements of the indictment as charged in the application paragraph of the jury charge. That is, when the court's charge to the jury is otherwise correct but places a higher burden on the State, failure to object constitutes an acceptance of that higher burden by the State, and it is bound to sustain that higher burden. *Fee v. State,* 841 S.W.2d 392, 396 (Tex.Crim.App.1992); *Warren v. State,* 810 S.W.2d 202, 204 (Tex.Crim.App.1991).

In the case *sub judice,* therefore, since the State has pled that appellant both placed Mary Smith in fear of death and serious bodily injury and that he also threatened to cause the death of or serious bodily injury to Mary Smith, and since both methods of elevating sexual assault to aggravated sexual assault were submitted to the jury conjunc-

tively in the application paragraph of the court's charge, the State is bound to prove both beyond a reasonable doubt.

Properly reviewing the sufficiency of the evidence to support a conviction in the light most favorable to the verdict, the majority improperly finds the evidence sufficient to support a finding of all the essential elements of the offense beyond a reasonable doubt. In reaching its conclusion, the majority carefully delineates the facts upon which it relies in finding the evidence sufficient to support the conviction. It is unclear whether the majority finds that each of these facts constitutes a threat of serious bodily injury or death or whether they judge the cumulative effect to rise to a threat of death or serious bodily injury. It should be pointed out that there is a difference between Smith's perceiving a threat of death or serious bodily injury as a possible consequence of escalation of the assault and appellant's intentionally or knowingly communicating a threat of death or serious bodily injury as required by the jury charge.

The facts delineated by the majority are:

1. Appellant entered Smith's apartment in the middle of the night;

2. he forced Smith to engage in non-consensual acts of sexual intercourse;

3. he twice threatened to "hurt" Smith if she did not comply;

4. he possessed physical strength superior to Smith's;

5. at one point Smith felt something "cold" at her back; and

6. that Smith testified to being in fear for her life and physical wellbeing.

The majority summarizes their analysis of point of error number four, writing "The fact that Smith never saw a weapon and that Dalton never threatened to 'kill' Smith does not alter our conclusion."

In determining whether the factors upon which the majority relies are sufficient evidence of the aggravating element of the offense, it is well to begin with an analysis of the difference between the aggravating element under TEX.PENAL CODE ANN. § 22.021(a)(2)(A)(ii) (Vernon 1994) and the aggravating element under TEX.PENAL CODE ANN. § 22.021(a)(2)(A)(iii) (Vernon 1994).

Under the former section 21.03(a)(2),[7] the focus was exclusively upon the physical and verbal conduct of the accused and whether it amounted to a threat of imminent infliction of death or serious bodily injury. Under the new section 22.021(a)(2)(A)(ii) the focus shifts to the victim's state of fear of imminent infliction of death or serious bodily injury induced by the assailant's acts or words. While, in light of the totality of the circumstances, the fear must be rational, subsection (ii) does not require that the actor intend to cause such fear. Although a threat to cause death or serious bodily injury to a victim would reasonably place that victim in fear of death or serious bodily injury, the law requires no such threat in order to find that the victim's fear is rational. The mere presence of an assailant in the victim's home has been found sufficient to satisfy the requisites of subsection (ii). *Dacquisto v. State*, 721 S.W.2d 603, 605 (Tex.App.—Amarillo 1986, pet. ref'd). The relatively superior strength of an assailant would also satisfy the requisites of subsection (ii).

When the aggravating factor is alleged pursuant to section 22.021(a)(2)(A)(iii), as in the case *sub judice*, the focus shifts back to the actions and intent of the defendant. There must be evidence of a threat to cause death or serious bodily injury, whether that threat be verbal or by actions. The El Paso Court of Appeals has pointed out that when the aggravation under the new section 22.021(a)(2) "must be inferred from physical conduct and words of the actor not expressly stating the requisite threat, the words and conduct must amount to more than the quantum of forcefulness needed for a simple sexual assault conviction under TEX.PENAL CODE ANN. sec. 22.011(b)(2) (Vernon Supp.1987)." *Douglas v. State*, 740 S.W.2d 890, 891 (Tex.

---

**7.** Act of May 25, 1981, 67th Leg., R.S., ch. 202, § 1, 1981 Tex.Gen.Laws 471, 471, *repealed by* Act of May 27, 1983, 68th Leg., R.S., ch. 977, § 12,

App.—El Paso 1987, no pet.).[8] Subsection (iii), however, shifts the emphasis from the subjective fears of the victim to the intent and actions of the assailant.

In *Chandler v. State*, this court has performed a careful analysis of subsection (iii) and has concluded that subsection (iii) does not constitute an offense separate and apart from simple sexual assault, which would require the pleading of a separate *mens rea.* Rather, subsection (iii) provides an additional element to simple sexual assault. We look to the *mens rea* pled in relation to the offense as a whole, that is, in relation to simple sexual assault with the additional aggravating element. *Chandler v. State*, 855 S.W.2d 38 (Tex.App.—Fort Worth 1993, no pet.).

In this case *sub judice*, the State has pled that appellant acted intentionally and knowingly in the commission of the offense of aggravated sexual assault. The culpable mental state applies to the aggravating element. The evidence, therefore, must show that appellant acted intentionally or knowingly, not recklessly, in threatening to cause death or serious bodily injury to Smith.

Keeping in mind that the threat must be made intentionally or knowingly and that the injury threatened must "amount to more than the quantum of forcefulness needed" to constitute simple sexual assault, we must examine the evidence.

The majority cites appellant's entry at night as evidence of a threat of death or serious bodily injury. Smith was asleep when appellant entered her apartment, so we shall assume the majority refers, not to the act of entry, but to the fact of entry and Smith's realization that appellant had entered her home. While it was reasonable for Smith to be frightened for her "wellbeing" when she realized a strange man was in her bed, this fear does not translate into an intentional or knowing threat of death or serious bodily injury expressed by words or acts. To find otherwise turns every offense involving entry into a home without consent

into an aggravated offense. It is equally difficult to imagine that the mere fact of being stronger than the victim would constitute an intentional or knowing communication of a threat of death or serious bodily injury.

The majority also cites nonconsensual sexual intercourse as either the threat of death or serious bodily injury or evidence of the threat of death or serious bodily injury. It is difficult to imagine a more frightening situation than sexual assault by force in the middle of the night at the hands of a stranger. A victim's expressed fear of serious bodily injury and death is imminently reasonable whenever such an assault occurs. Does this mean, then, that although the legislature has created a distinction between sexual assault by force and aggravated sexual assault under subsection (iii), the courts may act as a super-legislature and strike down such a distinction? Does this court really intend to announce that sexual assault by force and violence or threats of force and violence perforce provides the aggravating threat like some spineless hermaphrodite that coils back to fertilize itself?

As further evidence of a threat satisfying the requirements of subsection (iii), the majority points out that Smith felt something cold on her back. Smith made it clear that she did not know what touched her back. Nor did either attorney ask her whether she felt something hard or soft. She did not testify that whatever touched her back was sharp or pointed. We do not know whether she felt a cold belt buckle, a wet washcloth, or something that could serve as a weapon. We must take the record as it is presented to us. It is not proper for us to fill the gaps in the evidence to shore up missing elements of the offense.

The majority also points to two occasions on which appellant mentioned the word "hurt" in reference to Smith. The first occasion relied on by the majority occurred when

---

1983 Tex.Gen.Laws 5311, 5321 (recodified at Tex.Penal Code Ann. § 22.021 (Vernon 1994)).

**8.** It is not necessary to discuss the sufficiency of the evidence to support a conviction under

Tex.Penal Code Ann. § 22.021(a)(2)(A)(ii) (Vernon 1994) since subsections (ii) and (iii) were pled and charged conjunctively.

434

appellant kissed Smith while fondling her breasts.

> Q. What did he say when he kissed you?
>
> A. To kiss him back, and that he better like it or he was going to hurt me.

The second occasion occurred when appellant told Smith to fellate him.

> Q. When he put his penis in your mouth and told you to do that, what, if anything, did he say after that?
>
> A. That if I didn't do it, that he was going to hurt me.

While a threat to hurt Smith clearly satisfies the element of threatening to use force or violence, which is a necessary element to make the penetration nonconsensual under section 22.011(b)(2) and thereby turn the sexual intercourse into sexual assault, it does not constitute a threat of death or serious bodily injury. TEX.PENAL CODE ANN. § 22.011(b)(2) (Vernon 1994). Serious bodily injury means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ. TEX.PENAL CODE ANN. § 1.07(a)(46) (Vernon 1994).

There is simply no evidence of any threat that rises to the level of a threat of death or serious bodily injury. A victim's imagination may not supply this missing element of aggravated sexual assault.

There is no testimony of any verbal threat to cause death or serious bodily injury. There is no evidence appellant ever struck Smith, knocked her down, kicked her, or did anything not consistent with sexual assault by force.

In order to sustain the conviction, this court must find evidence in the record upon which a rational trier of fact could determine beyond a reasonable doubt that appellant, by acts or words, occurring in the presence of Mary Smith, intentionally or knowingly *threatened* to cause the death of or serious bodily injury to Mary Smith. The evidence is not sufficient if it merely shows she was placed in fear of death or serious bodily injury or that a threat was communicated inadvertently.

While the majority correctly reforms the judgment to reflect a single count rather than three distinct counts, and while the evidence is clearly sufficient to sustain a conviction for sexual assault of Mary Smith, I cannot agree that the evidence is sufficient to sustain a conviction for aggravated sexual assault as alleged in the indictment and as submitted to the jury.

For these reasons, and upon these limited bases, I respectfully dissent to the majority's affirming appellant's conviction of aggravated sexual assault and would reverse and order appellant's acquittal of aggravated sexual assault.

LIVINGSTON, Justice, dissenting.

I respectfully join in the dissent to the extent it finds that there is insufficient evidence to support a finding that the appellant "by acts or words ... threaten[ed] to cause the death, serious bodily injury, or kidnapping of any person" under section 22.021(a)(2)(A)(iii) of the Texas Penal Code.