TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-97-00309-CR







Vicente H. Fernandez, a/k/a Carlos Garcia, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT


NO. 0964490, HONORABLE JON N. WISSER, JUDGE PRESIDING







 Appellant Vicente H. Fernandez appeals his convictions for aggravated sexual assault (1) and
burglary of a habitation with intent to commit sexual assault. (2) After the jury found appellant guilty of both
offenses, appellant entered a plea of "true" before the court to a prior felony conviction alleged for
enhancement purposes. Evidence was offered as to other offenses and the trial court assessed life
imprisonment for both offenses of which the jury had convicted appellant. The sentences were made to
run consecutively with sentences from Bosque County.

 Appellant advances three points of error. First, appellant challenges the legal sufficiency
of the evidence to sustain his convictions for aggravated sexual assault and burglary of a habitation with
intent to commit sexual assault. Second, appellant reurges evidence insufficiency contending that the State
did not prove beyond a reasonable doubt that he intentionally and knowingly placed the complainant in fear
of serious bodily injury to be imminently inflicted. Third, appellant contends that the trial court erred in
refusing to charge the jury on the issue of the lesser included offense of sexual assault. We will affirm the
convictions.


Facts


 In August 1988, appellant appeared at the Sellers' family farm about nine miles southeast
of Manor in Travis County. Mike Sellers, the owner, described appellant as being dirty and hungry. He
related that his wife took pity on appellant and they allowed him to live in a small house on the property. 
Appellant did odd jobs around the farm and stayed through Easter 1989. Appellant was given a birthday
party in December 1988 and attended family gatherings at Christmas and at Easter 1989. Appellant was
described as a heavy smoker and Mike Sellers frequently purchased cigarettes for him. After a number
of months, Mike Sellers bought a bus ticket for appellant so that he could return home. Periodically,
appellant would return to the Sellers' farm, stay a short time, and leave again. Sellers recalled later buying
appellant a bus ticket to Georgia where appellant supposedly had a good job. Appellant reappeared in
the summer of 1991. He was told to leave and stay away. In 1993, he was seen on the property
apparently living in the woods.

 Mike Sellers' sons, Curtis and Larry, and their families lived on the property in question. 
The complainant, T___ S___ testified that she lived with her husband, Larry, and their two sons on acreage
which had been deeded to them. She met appellant in 1988 when he first stayed on the property and
attended family gatherings. She began to feel uncomfortable around appellant because he would come to
her house when her husband was not there and try to talk to her. On one occasion, he asked for a tool
which he was unable to describe in his broken English. When the complainant went with him to a tool shed
to determine if the tool he wanted was there, appellant grabbed her and held her arms. She retreated to
the house and locked the door. On numerous occasions, T___ S___ testified that appellant would point
to her eyes, describe them as black, and ask if she was not Mexican. On some occasions, he commented
that her "behind" was "grande." He also told her that she had two boys and needed a girl. On one
occasion, appellant came into her house, pointed, and asked if that was not her bedroom. He was told to
leave. At this time, appellant showed the complainant a roll of one hundred dollar bills and told her that
he wanted her to have the money and wanted her to sleep with him. He told her that he liked her and loved
her. When she started to leave in her truck, appellant began to cry and asked her not to tell her husband,
Larry, or her father-in-law, Mike. 

 In the early morning hours of September 2, 1994, T___ S___ was asleep alone in her
bedroom. Her husband was visiting his brother in another part of the state. Her two sons, eleven and eight
years of age, were asleep in another bedroom. The house had been locked and secured before T___
S___ retired. T___ S___ was awakened by the sound of a cigarette lighter being clicked. No one in her
home smoked. She saw the silhouette of a man in her room and asked "What's that?" The man told her
to "shut up," that he had a gun. The voice was forceful and rough. He told the complainant "I want you. 
I want to f--- you." When the man came close to the bed, he smelled of cigarettes and alcohol. It was
dark in the room and she could not see if the man had a gun. The man jumped on the waterbed and put
his hands over her mouth and nose and forced her head down until it hit the wood floor under the waterbed. 
The complainant struggled, but after she ceased the man released his hold. The complainant then
screamed, thinking the children might awaken and scare the man away. She then thought that if the children
came into the room, the man might hurt them if he had not already done so. The man pushed her head
down again and began to feel her breasts and private parts. The complainant could tell that the man's pants
were wet and that he had no shoes on his feet. When the man got up and took off his pants, they dropped
to the floor with a "thud" which the complainant thought could be the gun mentioned. The man told her that
he knew her and mispronounced her first name the same way appellant had done when he stayed at the
Sellers' farm. When she asked the man who he was, he replied "Emanuel" which sounded like "a man you
know." He spoke with a Hispanic accent as appellant did. When the complainant told the man that her
husband would be home shortly, he laughed and said he knew the husband "was gone," and that he also
knew the children were in the house. He called the complainant's husband by his first name and she
became certain that the man was appellant. 

 Appellant committed oral sex on the complainant and then had sexual intercourse with her. 
The complainant testified that she was scared and prayed out loud asking God to forgive her sins "because
I felt that I was going to be killed." When appellant asked what she was doing and she told him that she
was praying, he laughed. Throughout the entire assault, the complainant stated, "I felt I was going to die.
. . I felt that I wasn't going to survive and I had fears that my children would find me there dead and
naked."

 During the assault, although it was dark, the assailant repeatedly told the complainant that
he liked her black eyes and asked if she was not Mexican. Twice he told her that he wanted to give her
a baby girl since she had two boys. He place his hands on her hips and remarked: "Grande." All of the
remarks were similar to the comments appellant had made earlier when he lived on the farm. The
complainant never used the name "Vicente" because she was afraid that appellant would hurt her if he
thought she had recognized him. During the assault, the complainant continuously struggled, once kicking
the assailant in the groin. Each time she attempted to sit up, the man pushed her down by choking her and
covering her face.

 About 6:30 a.m., the assault ceased. The man laid a black slip across the complainant's
chest which scared her because she thought he was preparing to strangle her. Instead, the man dressed
and pulled the complainant into the living room where he embraced her. He told her that he had money
and would give it to her. She placed her hand on the top of his head to judge his height. When appellant
asked, the complainant told him he could come back Wednesday. She did this to get him to leave. When
the man left, she watched from the window and saw no car. She found a cigarette lighter and retained it
for the police. She immediately dressed and then heard one of her sons. Complainant got both children
and drove them in her truck to where the school bus stopped at 7:00 a.m. near the house of her friend,
Sharon Calvert.

 Calvert testified that the complainant drove into her driveway as usual. Calvert walked to
the truck and observed that the complainant looked "horrible" and in shock. The complainant told Calvert
that she had been raped by appellant. Calvert went with the complainant to the home of the complainant's
in-laws. The Sheriff's office was called. Complainant gave a written statement to law enforcement
personnel and was taken to St. David's Hospital in Austin for a rape examination. A vaginal swab sample
was taken from the complainant and semen was found to be present. Sperm was also found on
complainant's skirt. Three members of the Texas Department of Public Safety testified about the
serological analysis performed on the above described items and samples taken from the bodies of
appellant and the complainant. Three separate tests were performed: blood typing, DQ Alpha DNA, and
D1S80 DNA. The combined frequency of the results of these tests was 1 in 1,120 for the Hispanic
population, and appellant could not be excluded as the donor of the semen in question.

 Appellant did not testify or offer any evidence.


The First Two Points of Error


 In the first point of error, appellant challenges the legal sufficiency of the evidence to
support both of his convictions, for aggravated sexual assault and burglary of a habitation with intent to
commit sexual assault. Combining two contentions in a single point of error renders the point of error
multifarious and subject to being rejected for review. See Sterling v. State, 800 S.W.2d 513, 521 (Tex.
Crim. App. 1990), cert. denied, 501 U.S. 1213 (1991). In the interest of justice, we shall consider
appellant's contentions. Id. In point of error two, appellant reurges a phase of point of error one. He
argues that the evidence is insufficient to support the aggravating element of the offense of aggravated sexual
assault. We shall consider the two points together.


Legal Sufficiency


 In determining whether the evidence is legally sufficient to support the judgment, we view
the evidence in the light most favorable to the judgment, asking whether any rational trier of fact could have
found beyond a reasonable doubt all the essential elements of the offense charged. See Jackson v.
Virginia, 443 U.S. 307, 319 (1979); Lane v. State, 933 S.W.2d 504, 507 (Tex. Crim. App. 1996);
Emery v. State, 881 S.W.2d 702, 705 (Tex. Crim. App. 1994), cert. denied, 513 U.S. 1192 (1995).

 The evidence, viewed in this light, and all reasonable inferences drawn therefrom, are
evaluated in this review. See Alvarado v. State, 912 S.W.2d 199, 207 (Tex. Crim. App. 1995). A
reviewing court must consider all evidence, rightly or wrongly admitted, which the trier of fact was
permitted to consider. See Garcia v. State, 919 S.W.2d 370, 378 (Tex. Crim. App. 1997); Johnson
v. State, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993); Beltran v. State, 728 S.W.2d 382, 289 (Tex.
Crim. app. 1987). The standard for review is the same for both direct and circumstantial evidence. Green
v. State, 840 S.W.2d 394, 401 (Tex. Crim. App. 1992). Appellate courts measure the legal sufficiency
of the evidence against a hypothetically correct charge. See Malik v. State, 953 S.W.2d 234, 240 (Tex.
Crim. App. 1997). In analyzing a challenge to the legal sufficiency of the evidence, the reviewing court
does not realign, disregard, or weigh the evidence. Rodriguez v. State, 939 S.W.2d 211, 218 (Tex.
App.--Austin 1997, no pet.). The jury as the trier of fact is the sole judge of the credibility of the witnesses
and the weight to be given the testimony, and may accept or reject all or any part of any witness's
testimony. See Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986), cert denied, 488 U.S.
872 (1988); Williams v. State, 692 S.W.2d 671, 676 (Tex. Crim. App. 1984). Reconciliation of
evidentiary conflicts is solely the function of the trier of fact. See Miranda v. State, 813 S.W.2d 724, 733-34 (Tex. App.--San Antonio 1991, pet. ref'd); Juarez v. State, 796 S.W.2d 523 524 (Tex. App.--San
Antonio 1990, pet. ref'd).

 Appellant was indicted in the first count of the indictment in separate paragraphs with the
offenses of aggravated sexual assault. See Tex. Penal Code Ann § 22.021(a)(1)(A)(i), 22.021(a)(1)(A)(ii),
and § 22.021(a)(2)(A)(ii) (West 1994). The first two paragraphs of the first count alleged that appellant
sexually assaulted the complainant by causing his sexual organ to penetrate the sexual organ of the
complainant and alleged the aggravated element by stating that appellant by acts and words placed the
complainant in fear that serious bodily injury would imminently be inflicted on her. The other paragraphs
of the first count alleged that appellant sexually assaulted the complainant by causing the sexual organ of
the complainant to contact his mouth and alleged the aggravated element in the same words as stated
above. In a separate count, the indictment charged appellant with burglary of a habitation with intent to
commit sexual assault. The jury charge in its first application paragraph encompassed both theories
of aggravated sexual assault. The jury returned a verdict finding appellant guilty "as alleged in Count I of
the indictment." When different theories of the offense are submitted to the jury in disjunctive, a general
verdict is sufficient if the evidence supports one of the theories. See Fuller v. State, 827 S.W.2d 919, 931
(Tex. Crim. App. 1992), cert. denied, 509 U.S. 922 (1993). Kitchens v. State; 823 S.W.2d 256, 257-58 (Tex. Crim. App. 1991), cert. denied, 504 U.S. 958 (1992). The jury charge in its second application
paragraph submitted the offense of burglary of a habitation with intent to commit sexual assault. The jury
in a separate verdict found appellant guilty of the burglary of a habitation "as alleged within Count II of the
indictment."

 Appellant urges that the evidence is insufficient to establish his identity as the man who
assaulted the complainant. Appellant points out that in the dark the complainant never saw her assailant. 
He admits that the assailant had a Hispanic accent, was short, had a moustache, and that this description
fits him, and acknowledges that the assailant knew complainant's name and the name of her husband, and
that she had two sons. All these facts appellant concedes are suspicious, but he contends that the assailant
could be an acquaintance of appellant's with whom he had discussed details about the Sellers' family and
the time appellant spent on the farm. Appellant adds that the "possibility of this inference leaves open a
reasonable doubt whether the burglar, the perpetrator of the sexual assault, was appellant." Appellant
neglects to mention the DNA evidence. Moreover, he omits the fact that the assailant asked the same
questions and made many of the same remarks appellant did when he was employed on the Sellers' farm. 
The evidence shows the complainant concluded during the attack who her assailant was but did not use
his name for fear of being hurt. Her first outcry to a neighbor named appellant as her attacker. The
complainant made a clear-cut in-court identification of appellant as the perpetrator of the crimes charged.

 Other than the issue of identify and save for the complaint about the aggravating element,
appellant does not argue that the other elements of the offense are not supported by the evidence. In point
of error two, appellant does claim that the evidence does not show beyond a reasonable doubt that he
intentionally or knowingly by acts and words placed the complainant in fear that serious bodily injury would
be imminently inflicted upon her as charged in the first count of the indictment. In support thereof, appellant
contends (1) that the complainant in her statement to the police said appellant at one point in the assault told
her that he did not want to hurt her, (2) that her injuries were not serious bodily injuries, (3) (3) that the
assailant wanted to impregnate the complainant and (4) that he asked to return.

 An offense of sexual assault becomes aggravated, inter alia, under section 22.021(a)(2)
if (A) a person (ii) by acts or words places the victim in fear of death, serious bodily injury, or kidnaping
will be imminently inflicted on any person. See Tex. Penal Code Ann. § 22.021(a)(2)(A)(ii) (West 1994) (4)
in effect at the time of the instant offense. Two different sexual assault offenses were alleged in the first
count of the indictment, each such allegation being followed by a paragraph alleging the aggravating element
to each offense as follows: "Vicente Hernandez Fernandez, alias Carlos Garcia, did then and there
intentionally and knowingly by acts and words place T___ S___ in fear that serious bodily injury would
imminently be inflicted on T___ S___."

 The history of section 22.021(a)(2)(A) and its forerunners has been reported. See 6
Michael B. Charlton, Texas Criminal Law, § 13.08, p. 156-59 (Texas Practice 1994); see also Dodson
v. State, 699 S.W.2d 251, 253 (Tex. App.--Tyler 1985, no pet.); Lindsey v. State, 672 S.W.2d 892,
894 (Tex. App.--Dallas 1984), aff'd, 760 S.W.2d 649 (Tex. Crim. App. 1988). In deciding an
evidentiary attack in an aggravated sexual assault and the fear of the victim, the court in Greensfeld v.
State, 813 S.W.2d 158 (Tex. App.--Dallas 1991), aff'd, 843 S.W.2d 521 (Tex. Crim. App. 1992),
stated:


The jury is mandated to assay first if the state of fear in fact existed; the defendant's
conduct is then assessed to determine if it was the producing cause of such fear and
whether the subjective state of fear was reasonable in light of such conduct. Douglas v.
State, 740 S.W.2d 890, 891 (Tex. App.--El Paso 1987, no pet.); see Kemp v. State,
744 S.W.2d 243 245 (Tex. App.--Houston [14th Dist.] 1987, pet. ref'd). The jury may
consider an appellant's objective conduct, his acts, words, or deeds and infer from the
totality of the circumstances whether an appellant's overall conduct placed the complainant
in fear of serious bodily injury. Kemp, 744 S.W.2d at 245. It is not necessary to show
that serious bodily injury or death was threatened or inflicted. It is also not necessary to
show that the appellant could have inflicted serious bodily injury. Id.



Greensfeld, 813 S.W.2d at 162; see also Dodson, 699 S.W.2d at 254. Although Greensfeld and
Dodson were decided under immediate forerunners of section 22.021(a)(2)(A)(ii), the language of statutes
are substantially identical and the same evidentiary standard is used. See Selvog v. State, 895 S.W.2d
879, 882 (Tex. App.--Texarkana 1995, pet. ref'd); Elkins v. State, 822 S.W.2d 780, 782 (Tex.
App.--Houston [14th Dist.] 1992, pet. ref'd); "The core issue is whether there were 'acts or words' [of
the defendant] that would place a reasonable person in the victim's circumstances in fear that death or
serious bodily injury would be imminently inflicted upon her by her attacker." Nations v. State, 894
S.W.2d 480, 483 (Tex. App.--Austin 1995), vacated on other grounds, 930 S.W.2d 98 (Tex. Crim.
App. 1996). If the aggravating element exists, it must come primarily from the nature of the accused's acts
and the depth of his victim's fear. See Dacquisto v. State, 721 S.W.2d 603, 605 (Tex. App.--Amarillo
1986, pet. ref'd); see also Ontiveros v. State, 890 S.W.2d 919, 927 (Tex. App.--El Paso 1994, no
pet.).

 In dissent in Dalton v. State, Justice Dauphinot stated:


Under the new section 22.021(a)(2)(A)(ii) the focus shifts to the victim's state of fear of
imminent infliction of death or serious bodily injury induced by the assailant's acts or
words. While, in the light of the totality of the circumstances, the fear must be rational,
subsection (ii) does not require that the actor intended to cause such fear.



Dalton v. State, 898 S.W.2d 424, 432 (Tex. App.--Fort Worth 1995, pet. ref'd).

 The jury can rationally determine if the accused's acts or words standing alone could
reasonably cause a victim's fear of death. Id. Fear of death subsumes fear of serious bodily injury. Honea
v. State, 585 S.W.2d 681, 684 (Tex. Crim. App. 1979). A threat to cause death or serious bodily injury
to a victim would reasonably place the victim in fear of death or serious bodily injury, but the law requires
no such threat in order to find the victim's fear is rational. See Dalton, 898 S.W.2d at 432 (Dauphinot,
J., dissenting). It is not necessary to demonstrate that the accused could have inflicted serious bodily injury
and did not. Greensfeld, 813 S.W.2d at 162. It is also not necessary that a threat or being placed in a
state of required fear be communicated verbally. See Elkins, 822 S.W.2d at 753. Further, there is no
need for a victim to articulate the exact words "I was afraid." See Selvog, 895 S.W.2d at 882. 

 Turning back to the record, we find that appellant entered the locked habitation of the
complainant about three or four o'clock in the morning when she was asleep. When the complainant
observed appellant in her bedroom, he told her that he had a gun and to "shut up." Appellant placed his
hand over the complainant's mouth and nose and pushed her down until her head hit the floor underneath
the waterbed. When appellant took off his pants, the victim heard the "thud" on the floor which she
assumed was the gun. The complainant prayed out loud because she was scared that she was going to be
killed. At other points, the complainant related that she felt she was going to die, was not going to survive,
and that her children would find her dead body. Appellant forcibly assaulted the complainant sexually for
about two hours and at times choked her. The fact that the complainant never saw a gun or that appellant
never explicitly threatened to kill the victim or to cause serious bodily injury does not make her fear
unreasonable. See Dalton, 898 S.W.2d at 429. Likewise, the fact the complainant was informed that she
would not be hurt, that her injuries were not serious bodily injuries, that appellant wanted to impregnate the
complainant and wanted to return would not make the fear of the complainant unreasonable.

 The mere presence of an assailant in the victim's home has been found sufficient to satisfy
the requisites of section 22.021(a)(2)(A)(ii). See Dacquisto, 721 S.W.2d at 605. "It is difficult to imagine
a more frightening situation than sexual assault by force in the middle of the night at the hands of a stranger. 
A victim's expressed fear of serious bodily injury is imminently reasonable whenever such an assault
occurs." Dalton, 898 S.W.2d 433 (Dauphinot, J., dissenting). 

 Viewing the evidence in the light most favorable to the jury's verdict, we conclude that a
rational jury could have found beyond a reasonable doubt all the essential elements of the offense of
aggravated sexual assault including the unnecessarily alleged culpable mental states of the aggravated
element of the offense charged. In addition, we conclude that a rational jury could have found beyond a
reasonable doubt all the essential elements of the offense of burglary of a habitation with intent to commit
sexual assault. (5) 

 In his third point of error, appellant contends that the trial court erred in refusing to charge
on the lesser included offense of sexual assault. There is a two-prong test for determining whether a jury
must be charged on a lesser included offense. First, the lesser included offense must be included within the
proof necessary to establish the offense charged. Second, some evidence must exist in the record that
would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser offense. 
See Rousseau v. State, 855 S.W.2d 666, 672-73 (Tex. Crim. App. 1993). This test is often called the
"Royster" or the "Royster-Aguilar" test as modified by Rousseau. See Aguilar v. State, 682 S.W.2d 556,
558 (Tex. Crim. App. 1985); Royster v. State, 622 S.W.2d 442, 447 (Tex. Crim. App. 1981);
Rousseau, 855 S.W.2d at 672-73. "In applying the test, the trial court should make a determination
as to whether the evidence of the lesser offense would be sufficient for a jury rationally to find that the
defendant is guilty only of that offense, and not the greater offense." Rousseau, 855 S.W.2d at 673
(emphasis added).

 Sexual assault is a lesser included offense of aggravated sexual assault. See Ramos v.
State, 865 S.W.2d 463, 465 (Tex. Crim. App. 1993); Chavis v. State, 807 S.W.2d 375, 377 (Tex.
App.--Houston [14th Dist.] 1991, pet. ref'd). Thus, the first prong of the Royster, test has been met and
we will analyze only under the second prong. Gaston v. State, 930 S.W.2d 222, 225 (Tex. App.--Austin
1996, no pet.).

 In determining whether the trial court erred in failing to give a charge on the lesser included
offense, all of the evidence presented by the State and the defendant must be considered. See Perry v.
State, 903 S.W.2d 715, 755 (Tex. Crim. App.), cert. denied, 116 S. Ct. 480 (1995). In fact, if evidence
from any source affirmatively raises the issue of a lesser included offense, a defendant is entitled to an
instruction thereon. Bignall v. State, 887 S.W.2d 21, 24 (Tex. Crim. App. 1994). "After Rousseau, the
only restriction placed on this evidence is that it must permit a rational jury to find that the defendant is guilty
[only] of the lesser offense . . ." Bignall, 887 S.W.2d at 24. It is not enough, however, that the jury may
disbelieve crucial evidence pertaining to the greater offense. Id. Instead, "there must be some evidence
directly germane to a lesser . . . offense for the fact finder to consider before an instruction is warranted." 
Id; see also Skinner v. State, 956 S.W.2d, 532, 543 (Tex. Crim. App. 1997); Means v. State, 955
S.W.2d 686, 691 (Tex. App.--Amarillo 1997, pet. ref'd). Mere speculation or surmise does not meet
the test of the second prong of the Royster test. See Hall v. State, 682 S.W.2d 608, 609 (Tex.
App.--Beaumont 1984, no pet.). Entitlement to a jury instruction on a lesser included offense on a case-by-case basis according to the particular facts. Livingston v. State, 739 S.W.2d 311, 336 (Tex. Crim.
App. 1987), cert. denied, 487 U.S. 1210 (1988); Ybarra v. State, 890 S.W.2d 98, 108 (Tex. App.--
San Antonio 1994, pet. ref'd). 

 If a defendant either presents evidence that he committed no offense or presents no
evidence, and there is no evidence otherwise showing he is guilty only of the lesser offense, then a jury
instruction on the lesser included offense is not required. Bignall, 887 S.W.2d at 24; Jones v. State, 921
S.W.2d 361, 364 (Tex. App.--Houston [1st Dist.] 1996, pet. ref'd).

 Appellant presented no evidence in the instant case. We must determine whether there is
evidence elicited during the State's case-in-chief to show that if guilty, he is guilty only of sexual assault, and
not the offenses of aggravated sexual assault as charged. The sufficiency of the evidence of the aggravated
element of the offenses charged has been discussed at some length. It need not be repeated here.

 The evidence supporting the aggravating element of the offenses charged was not in dispute. 
The fact that during the sexual assault, as earlier described, appellant told the complainant that he was not
going to hurt her, that he loved her, that he wanted to give her a baby girl, and asked if he could return is
not evidence from which a jury could rationally conclude that his actions did not place the complainant in
fear of imminent serious bodily injury. A defendant cannot escape his liability for aggravated sexual assault
by virtue of such statements. A jury rationally could not find that appellant was guilty only of sexual assault
and not of aggravated sexual assault. Appellant's third point of error is overruled.

 The judgment is affirmed.




 

 John F. Onion, Jr., Justice

Before Justices Powers, Aboussie and Onion*

Affirmed

Filed: August 31, 1998

Do Not Publish





















* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1988).
1. See Act of May 29, 1993, 73d Leg., R.S., ch. 900, § 1.01, eff. Sept. 1, 1994, 1993 Tex. Gen.
Laws 3586, 3620-21.(Tex. Penal Code § 22.021(a)(1)(A), (a)(2)(A)(ii)). The statute has since been
amended by Act of May 29, 1995, 74th Leg., R.S., ch. 318, § 7, 1995 Tex. Gen. Laws 2734, 2737, since
amended by Act of May 28, 1997, 75th Leg., R.S., ch. 1286, § 2, 1997 Tex. Gen. Laws 4911, 4912,
and codified as Tex. Penal Code Ann. § 22.021(a)(1)(A), (a)(2)(A)(ii) (West 1994). 
2. See Tex. Penal Code § 30.02(a)(1) (West 1994).
3. See Tex. Penal Code Ann. § 1.07(a)(46) (West 1994). The complainant's injuries were shown
to be a busted lip, bruises on her neck, and a general stiffness over her body.
4. Act of May 29, 1993, 73d Leg., R.S., ch. 900, § 1.01, eff. Sept. 1, 1994, 1993 Tex. Gen. Laws
3586, 3620-21. The statute has since been amended by Act of May 29, 1995, 74th Leg., R.S., ch. 318,
§ 7, 1995 Tex. Gen. Laws 2743, 2737, then amended by Act of May 28, 1997, 75th Leg., R.S., ch.
1286, § 2, 1997 Tex. Gen. Laws 4911, 4912. The language quoted above remains unchanged.
5. Appellant included a challenge to the sufficiency of the evidence to support the burglary
conviction in the multifarious first point of error, but did little to support his contention. See Tex. R. App.
P. 38.1(h) (brief must contain a clear and concise argument for contentions made, with appropriate citations
to authorities and to record).



rwise showing he is guilty only of the lesser offense, then a jury
instruction on the lesser included offense is not required. Bignall, 887 S.W.2d at 24; Jones v. State, 921
S.W.2d 361, 364 (Tex. App.--Houston [1st Dist.] 1996, pet. ref'd).

 Appellant presented no evidence in the instant case. We must determine whether there is
evidence elicited during the State's case-in-chief to show that if guilty, he is guilty only of sexual assault, and
not the offenses of aggravated sexual assault as charged. The sufficiency of the evidence of the aggravated
element of the offenses charged has been discussed at some length. It need not be repeated here.

 The evidence supporting the aggravating element of the offenses charged was not in dispute. 
The fact that during the sexual assault, as earlier described, appellant told the complainant that he was not
going to hurt her, that he loved her, that he wanted to give her a baby girl, and asked if he could return is
not evidence from which a jury could rationally conclude that his actions did not place the complainant in
fear of imminent serious bodily injury. A defendant cannot escape his liability for aggravated sexual assault
by virtue of such statements. A jury rationally could not find that appellant was guilty only of sexual assault
and not of aggravated sexual assault. Appellant's third point of error is overruled.

 The judgment is affirmed.




 

 John F. Onion, Jr., Justice

Before Justices Powers, Aboussie and Onion*

Affirmed

Filed: August 31, 1998

Do Not Publish





















* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1988).
1. See Act of May 29, 1993, 73d Leg., R.S., ch. 900, § 1.01, eff. Sept. 1, 1994, 1993 Tex. Gen.
Laws 3586, 3620-21.(Tex. Penal Code § 22.021(a)(1)(A), (a)(2)(A)(ii)). The statute has since been
amended by Act of May 29, 1995,