Patrecia Eileen WATKINS aka Patricia Eileen Watkins, Appellant,

v.

The STATE of Texas, State.

Christopher J. WHITESIDE, Appellant,

v.

The STATE of Texas, State.

Nos. 2–96–110–CR, 2–96–178–CR.

Court of Appeals of Texas, Fort Worth.

May 22, 1997.

J. Rex Barnett, Earl R. Waddell, III, Fort Worth, for Appellant.

Tim Curry, Criminal District Attorney, Charles Mallin, Chief of Appellate Section, Danielle A. Legault, Jay Lapham, Mickey Klein, and Debra Ann Windsor, Assistant Criminal District Attorneys, Fort Worth, for State.

Before DAY, LIVINGSTON and RICHARDS, JJ.

## OPINION

DAY, Justice.

A jury found appellants Christopher J. Whiteside and Patrecia Eileen Watkins guilty of the aggravated sexual assault of Watkins's eight-year-old son M.W. They were tried as co-defendants. The jury assessed both of their punishments at confinement for life in the Texas Department of Criminal Justice and a $10,000 fine.

On appeal, Whiteside raises six points of error and Watkins raises three. Both argue that the trial court erred by denying their motions to sever. Watkins further argues that the trial court erred by admitting evidence of prior acts of sexual misconduct not alleged in the indictment. She also asserts that the State made improper jury arguments alleging that Watkins was aware that M.W.'s father had also sexually abused him.

Whiteside contests the jury's general guilty verdict in three points of error. He contends that it was error for the trial court to convict him and sentence him for four separate offenses when the jury returned a general verdict of guilty, and he argues that the trial court erred by not instructing the jury to return a separate verdict for each count. In points of error four and five, Whiteside asserts that the trial court erred

at punishment by admitting nonrelevant and prejudicial extraneous offense evidence showing that Whiteside had sexually abused his own sons in M.W.'s presence and that Whiteside had given M.W. an alcoholic drink and a pornographic book.

In Whiteside's case, we reform the trial court's judgment to properly reflect the jury's finding and affirm it as reformed. In Watkins's case, we affirm the trial court's judgment.

## BACKGROUND

M.W. told his second grade teacher that his stepfather, Whiteside, was sexually abusing him. She notified the school's principal, and within a few days, Child Protective Services (CPS) was notified. A CPS specialist, Jerald Henderson, interviewed M.W. and referred him to Dr. Leah Lamb, a pediatrician, for an examination. The CPS investigation indicated that M.W. had been sexually abused by Watkins as well as Whiteside. Accordingly, CPS notified the police department.

Both Watkins and Whiteside were arrested. Whiteside was charged with four counts of aggravated sexual assault of a child and two counts of indecency with a child. Watkins was charged with three counts of aggravated sexual assault of a child and two counts of indecency with a child. *See* TEX. PENAL CODE ANN. §§ 21.11(a), 22.021(a) (Vernon 1994 & Supp.1997). They were tried as co-defendants.

Dr. Lamb testified that her examination of M.W. revealed physical findings consistent with sexual abuse. M.W. was admitted to inpatient psychiatric treatment at Cook Children's Hospital. Dr. Debra Kowalski, a child psychiatrist, treated him. She diagnosed M.W. as suffering from chronic post-traumatic stress disorder.

When M.W. testified, he initially told the jury that he did not remember most of what had happened. However, he eventually testified about his sexual abuse using anatomically correct dolls. M.W. testified that Whiteside touched M.W.'s penis, that Whiteside put M.W.'s penis in Whiteside's mouth, that Whiteside put Whiteside's penis in M.W.'s mouth, that Whiteside put his finger in M.W.'s anus, and that Whiteside put his penis in M.W.'s anus. M.W. further testified that Watkins put M.W.'s penis in her mouth, that she had M.W. put his fingers in her vagina, that she put M.W.'s penis in her vagina, and that she called M.W. into the room while Whiteside and Watkins were having sex and had M.W. put his penis in her mouth while Whiteside put his finger in M.W.'s anus.

## MOTIONS FOR SEVERANCE

■ Both Whiteside and Watkins argue that the trial court erred by denying their motions to sever. They each filed motions to sever under article 36.09 of the Texas Code of Criminal Procedure, objecting to the prejudicial effect of evidence relevant to the prosecution of the other defendant that would be inadmissible if the cases were tried separately. Article 36.09 provides:

> Two or more defendants who are jointly or separately indicted or complained against for the same offense or any offense growing out of the same transaction may be, in the discretion of the court, tried jointly or separately as to one or more defendants; provided that in any event either defendant may testify for the other or on behalf of the state; and provided further, that in cases in which, upon *timely motion to sever, and evidence introduced thereon,* it is made known to the court that there is a previous admissible conviction against one defendant or that a joint trial would be prejudicial to any defendant, the court shall order a severance as to the defendant whose joint trial would prejudice the other defendant or defendants.

TEX.CODE CRIM. PROC. ANN. art. 36.09 (Vernon 1981) (emphasis added).

Severance under article 36.09 is not a matter of right. It rests within the sound discretion of the trial court. *See Garza v. State,* 622 S.W.2d 85, 91 (Tex.Crim.App. [Panel Op.] 1980); *Robinson v. State,* 449 S.W.2d 239, 240 (Tex.Crim.App.1969); *Routledge v. State,* 834 S.W.2d 452, 459 (Tex.App.—Fort Worth 1992, pet. ref'd). However, denial of a motion to sever is outside the discretion of the trial court where: (1) one defendant has a

prior admissible criminal record and the other does not; (2) the defendants are not charged with the same offense or with offenses growing out of the same transaction; or (3) the defendant has satisfied the burden of offering evidence showing a clear prejudice caused by the joinder. *See* TEX.CODE CRIM. PROC. ANN. art. 36.09 (Vernon 1981); *Mulder v. State,* 707 S.W.2d 908, 915 (Tex. Crim.App.1986); *Robinson,* 449 S.W.2d at 240–41; *see also Silva v. State,* 933 S.W.2d 715, 719 (Tex.App.—San Antonio 1996, no pet.); *Stokes v. State,* 853 S.W.2d 227, 241 (Tex.App.—Tyler 1993, no pet.).

Thus, a defendant seeking severance must: (1) file a timely motion for severance; and (2) offer proof in support of the grounds for severance. *See Saunders v. State,* 572 S.W.2d 944, 948 (Tex.Crim.App. [Panel Op.] 1978); *Stokes,* 853 S.W.2d at 241; *see also Mulder,* 707 S.W.2d at 915; *Routledge,* 834 S.W.2d at 459. Simply alleging that prejudice will result is not evidence of, or a sufficient showing of, prejudice under article 36.09. *See Mulder,* 707 S.W.2d at 915; *Routledge,* 834 S.W.2d at 459. Accordingly, if the motion to sever is not supported by evidence, its denial is not an abuse of discretion. *See Mulder,* 707 S.W.2d at 915; *Sanne v. State,* 609 S.W.2d 762, 776 (Tex.Crim.App.1980), *cert. denied,* 452 U.S. 931, 101 S.Ct. 3067, 69 L.Ed.2d 432 (1981); *Ransonette v. State,* 550 S.W.2d 36, 41 (Tex.Crim.App.1976); *Routledge,* 834 S.W.2d at 459.

■ Neither Whiteside nor Watkins offered evidence in support of the grounds alleged in their motions to sever—that evidence relevant to the prosecution of the other defendant that would be inadmissible if the cases were tried separately would prejudice the case of each. However, Whiteside argues additionally that the trial court had no discretion to deny his motion because their prosecutions were improperly joined. He contends that they were not indicted for the same offense or offenses growing out of the same transaction. But he failed to raise this theory at trial. His motion to sever argued only that evidence relevant to Watkins's prosecution that would not be admissible if the cases were tried separately would

prejudice his case. He put forth no other argument against joinder at trial.

When the complaint on appeal differs from that made at trial, the error is waived. *See Cook v. State,* 858 S.W.2d 467, 474 (Tex.Crim. App.1993). The trial judge did not have an opportunity to rule on that legal theory, and the State did not have an opportunity to offer evidence and argue against it. *See id.; Lankston v. State,* 827 S.W.2d 907, 909 (Tex. Crim.App.1992); *Purtell v. State,* 761 S.W.2d 360, 365–66 (Tex.Crim.App.1988), *cert. denied,* 490 U.S. 1059, 109 S.Ct. 1972, 104 L.Ed.2d 441 (1989); *Zillender v. State,* 557 S.W.2d 515, 517 (Tex.Crim.App.1977). Thus, Whiteside has waived this argument.

Because neither Whiteside nor Watkins met the burden of offering evidence that showed they would be prejudiced by joint trials, we hold the trial court did not abuse its discretion in denying their motions to sever. Accordingly, we overrule Watkins's second point of error and Whiteside's sixth point of error.

### WATKINS'S OTHER COMPLAINTS

Watkins raises two other points of error. First, she argues that extraneous offense evidence admitted during the guilt/innocence phase of trial should not have been admitted. In her last point of error, she argues that the State made an improper jury argument during its argument at the close of the punishment phase of the trial.

#### *Extraneous Offense Evidence*

■ We first consider her argument that the trial court erred, during the guilt-innocence phase of trial, by admitting evidence of prior acts of sexual misconduct that were not alleged in her indictment. The testimony that Watkins complains of is M.W.'s testimony about instances when Whiteside touched M.W. on M.W.'s penis while they were living in Reno, Texas.

Watkins's assertion that this evidence was somehow evidence of other crimes, wrongs, or acts under Texas Rule of Criminal Evidence 404(b) is mistaken. Extraneous offense evidence must necessarily involve evidence of prior criminal conduct by

the *accused. See McKay v. State,* 707 S.W.2d 23, 31–32 (Tex.Crim.App.1985), *cert. denied,* 479 U.S. 871, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986); *Williams v. State,* 834 S.W.2d 502, 508 (Tex.App.—Fort Worth 1992, pet. ref'd). If the challenged evidence does not show that an offense was committed *or does not connect the defendant to the offense, then it is not evidence of an* extraneous offense. *See Moreno v. State,* 858 S.W.2d 453, 463 (Tex.Crim.App.1993), *cert. denied,* 510 U.S. 966, 114 S.Ct. 445, 126 L.Ed.2d 378 (1993); *Lockhart v. State,* 847 S.W.2d 568, 573 (Tex.Crim.App.1992), *cert. denied,* 510 U.S. 849, 114 S.Ct. 146, 126 L.Ed.2d 108 (1993); *Williams,* 834 S.W.2d at 508.

M.W. never testified that Watkins had any involvement with or knowledge of the incidents in this testimony. None of the testimony that Watkins is complaining about shows that she committed any offense involving Whiteside's fondling of M.W. or that Watkins committed any crime while they were living with Whiteside in Reno, Texas. This testimony concerned Whiteside's prior criminal conduct. These offenses were not extraneous offenses as to Watkins. Accordingly, we overrule Watkins's first point of error.

### Jury Argument

■ Lastly, Watkins complains that the State made improper jury arguments because it alleged that Watkins was aware that M.W.'s biological father had also sexually abused him. During the State's argument at punishment, it argued, "[Y]ou know that this woman is on her second husband and the second time that she's allowed someone to abuse her child." Then in its rebuttal argument, the State argued, "We have heard a lot of talk about [M.W.] being sexually abused by his own father, and a reasonable deduction from the evidence, ladies and gentlemen, is that [Watkins] knew her former husband, Ernest Watkins, had—." Watkins objected to both remarks as being outside the record. The trial court sustained the objections and instructed the jury to disregard both remarks. Each time, Watkins moved for a

mistrial, and the trial court denied the motion.

The purpose of closing argument is to facilitate the jury's proper analysis of the evidence presented at trial so that it may arrive at a just and reasonable conclusion based on the evidence alone and not on any fact not admitted into evidence. *See Campbell v. State,* 610 S.W.2d 754, 756 (Tex.Crim.App. [Panel Op.] 1980); *Taylor v. State,* 911 S.W.2d 906, 911 (Tex.App.—Fort Worth 1995, pet. ref'd); *Monkhouse v. State,* 861 S.W.2d 473, 478 (Tex.App.—Texarkana 1993, no pet.). To be permissible, jury argument must fall within one of the following four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to opposing counsel's argument; or (4) plea for law enforcement. *See Felder v. State,* 848 S.W.2d 85, 94–95 (Tex.Crim.App.1992), *cert. denied,* 510 U.S. 829, 114 S.Ct. 95, 126 L.Ed.2d 62 (1993); *Alejandro v. State,* 493 S.W.2d 230, 231 (Tex. Crim.App.1973).

Each of the arguments Watkins complains of integrates a summation of evidence with a reasonable deduction from the evidence. When Dr. Kowalski testified regarding M.W.'s post-traumatic stress disorder, Watkins's counsel cross-examined her about whether another trauma may have caused M.W.'s symptoms. During that cross-examination, Watkins's counsel asked specifically if M.W. had told her about a "continued period" of sexual abuse by his biological father. She responded, "Yes, he did. He told me that. . . ." Thus, the jury had heard evidence of M.W.'s previous sexual abuse. When Whiteside's counsel cross-examined Dr. Kowalski, it was shown that M.W. had been taken to counseling after his father had sexually abused him. Later, M.W. testified that he had previously been sexually abused by his father. Moreover, he testified extensively regarding sexual abuse he received from Watkins and from Watkins and Whiteside together.

■ It is reasonable to infer that if M.W., a young child, was taken for counseling after being sexually abused by his father that Watkins, his mother, knew of the counseling and why he was going to counseling. Additional-

ly, in light of the evidence of Watkins's sexual abuse of M.W., it is not unreasonable to infer that she "allowed" her ex-husband and Whiteside to abuse M.W. Attorneys are allowed wide latitude in drawing inferences from the evidence provided the inferences drawn are reasonable, fair, legitimate, and offered in good faith. *See Gaddis v. State,* 753 S.W.2d 396, 398 (Tex.Crim.App.1988); *Smith v. State,* 842 S.W.2d 401, 406 (Tex. App.—Fort Worth 1992, pet. ref'd). To constitute reversible error, jury argument must be extreme or manifestly improper, or inject new and harmful facts into evidence.[1] *See Gaddis,* 753 S.W.2d at 398; *Smith,* 842 S.W.2d at 406.

We hold the jury arguments in question were proper as summations of the evidence and as reasonable deductions from the evidence. Accordingly, we overrule Watkins's final point of error and affirm the trial court's judgment regarding Watkins.

### WHITESIDE'S OTHER COMPLAINTS

Whiteside raises five additional points of error. Two concern extraneous offense evidence admitted during the punishment phase of trial. Three are in regard to the jury's general verdict.

### *Extraneous Offense Evidence*

Whiteside's points of error four and five are about extraneous offense evidence admitted during the punishment phase of the trial. He asserts that the trial court erred at punishment by admitting nonrelevant and prejudicial extraneous offense evidence—that he had sexually abused his own sons in M.W.'s presence and that he had given M.W. an alcoholic drink and a pornographic book.

▮ The evidence complained of in Whiteside's fourth point of error is M.W.'s testimony regarding Whiteside's abuse of his own sons. When the State sought to introduce this testimony, Whiteside objected and the trial court conducted a hearing outside the presence of the jury. The court concluded the evidence was admissible because Whiteside had "opened the door" by raising the issue of his suitability for probation during his direct examination of Whiteside's sister:

[WHITESIDE'S ATTORNEY:] If this jury sees fit to give your brother probation for this offense, will you do the best you can to help him abide by any conditions the Judge places upon that probation?

[WITNESS:] Yes.

[WHITESIDE'S ATTORNEY:] Do you think that if the Judge placed a condition on his probation that prohibited him from consuming alcohol and gave him treatment for that, do you believe your brother could avoid these types of situation [sic] in the future?

[WITNESS:] Yes.

Whiteside argues that the testimony was nothing more than Whiteside's sister putting forth her opinion that alcohol is the root of Whiteside's problems and the problem should be treated if he is placed on probation so he can comply with any terms imposed. He asserts that the testimony in no way raised the issue of his suitability for probation. Thus, he contends the trial court's ruling was erroneous and the testimony was inadmissible.

When reviewing a trial court's decision to admit or to exclude evidence, an appellate court "must afford a trial court great discretion in its evidentiary decisions." *Montgomery v. State,* 810 S.W.2d 372, 378 (Tex.Crim. App.1990). *pet. ref'd,* 827 S.W.2d 324 (Tex. Crim.App.1992). Appellate courts recognize that the trial judge is "in a superior position to evaluate the impact of the evidence." *Id.* at 379; *Bisby v. State,* 907 S.W.2d 949, 952–53 (Tex.App.—Fort Worth 1995, pet. ref'd). Thus, an appellate court should not overturn such a trial court ruling absent a clear abuse of discretion. *See Montgomery,* 810 S.W.2d at 380; *Bisby,* 907 S.W.2d at 953. Moreover,

---

1. Regardless, the trial court cured any error committed with its prompt instructions to disregard. Generally, any harm from an improper statement in a jury argument is remedied when the court instructs the jury to disregard, unless the remark is so inflammatory that the prejudicial effect cannot be removed by an admonishment. *See Johnson v. State,* 698 S.W.2d 154, 167 (Tex.Crim.App.1985), *cert. denied,* 479 U.S. 871, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986); *Faulkner v. State,* 940 S.W.2d 308, 312 (Tex.App.—Fort Worth 1997, pet. filed); *Peoples v. State,* 874 S.W.2d 804, 805–06 (Tex.App.—Fort Worth 1994, pet. ref'd).

a correct ruling given for the wrong reason will not result in reversal. If the decision of the trial court is correct on any applicable theory of law, it should not be disturbed on appeal. *See, e.g., Calloway v. State,* 743 S.W.2d 645, 651–52 (Tex.Crim.App.1988); *Bisby,* 907 S.W.2d at 953.

M.W.'s testimony was admissible under section 3(a) of article 37.07 of the Code of Criminal Procedure. This provision allows for admission of unadjudicated extraneous offenses at punishment notwithstanding the rules governing the admission of character evidence.[2] *See Muhammad v. State,* 911 S.W.2d 823, 827–28 (Tex.App.—Texarkana 1995, no pet.); *Smith v. State,* 899 S.W.2d 31, 33 (Tex.App.—Austin 1995, pet. ref'd). Thus, it was within the scope of the trial court's discretion to admit the evidence. Accordingly, we need not determine whether the trial court correctly ruled that Whiteside "opened the door" for M.W.'s testimony. We overrule Whiteside's fourth point of error.

■ In his fifth point of error, Whiteside complains of the admission of M.W.'s testimony that he had sexually abused his own sons in M.W.'s presence and that he had given M.W. an alcoholic drink and a pornographic book. Whiteside contends that these extraneous offenses were inadmissible because they were not proven beyond a reasonable doubt.

Whiteside did not object on this basis at trial. When the complaint on appeal differs from that made at trial, the error is waived. *See Cook,* 858 S.W.2d at 474. The trial judge did not have an opportunity to rule on that legal theory, and the State did not have an opportunity to remove the basis for the objection at trial. *See id.; Lankston,* 827 S.W.2d at 909; *Purtell,* 761 S.W.2d at 365–66; *Zillender,* 557 S.W.2d at 517.

During the hearing on the admissibility of M.W.'s testimony, no one suggested that there would not be sufficient evidence for a rational jury to believe Whiteside committed the extraneous offenses beyond a reasonable doubt. Whiteside cannot complain now that the State failed to meet this burden when he raised no such objection at trial. *See Lankston,* 827 S.W.2d at 909; *Zillender,* 557 S.W.2d at 517. Thus, we hold Whiteside has waived this argument, and we overrule his fifth point of error.

### General Guilty Verdict

■ Whiteside's remaining points of error are concerned with the jury's general verdict. He contends, in his first two points of error, that it was error for the trial court to convict him and sentence him for four separate offenses when the jury returned a general verdict of guilty. He argues in his third point that the trial court erred by not instructing the jury to return a separate verdict for each count.

Whiteside argues that the general verdict is *"void ab initio"* and cannot form the basis of the trial court's judgment. For this reason, he contends the trial court should have instructed the jury to return separate verdicts on each "count" listed in the indictment.

■ Section 1(c) of article 37.07 of the Texas Code of Criminal Procedure provides: "If the charging instrument contains more than one count ... the jury shall be instructed to return a finding of guilty or not guilty in a separate verdict as to each count and offense submitted to them." TEX.CODE CRIM. PROC. ANN. art. 37.07, § 1(c) (Vernon 1981). However, a "count [in an indictment] may contain as many separate paragraphs charging the same offense as necessary." TEX. CODE CRIM. PROC. ANN. art. 21.24(b) (Vernon

---

2. Article 37.07 provides:
    Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant *as to any matter the court deems relevant to sentencing,* including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, *notwithstanding* Rules 404 and 405, Texas

Rules of Criminal Evidence, *any other evidence of an extraneous crime or bad act* that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.
TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(a) (Vernon Supp.1997) (emphasis added).

1989); *Aguirre v. State,* 732 S.W.2d 320, 325 (Tex.Crim.App. [Panel Op.] 1987) (op. on reh'g). The term "count" is used to charge the offense itself, and a "paragraph" is a portion of a count, which charges a method of committing the offense. *See Dalton v. State,* 898 S.W.2d 424, 426 n. 2 (Tex.App.—Fort Worth 1995, pet. ref'd); *Riley v. State,* 658 S.W.2d 818, 819 (Tex.App.—Fort Worth 1983, no pet.); *see also Renfro v. State,* 827 S.W.2d 532, 535 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd). The substance of the allegation determines its character as a "count" or "paragraph," not the terminology used. *See Dalton,* 898 S.W.2d at 426.

The State maintains that the "counts" in Whiteside's indictment were in fact "paragraphs" that were improperly labeled. Because each "count" simply alleges a different method of committing the offense of the aggravated sexual assault of M.W. on or about April 1, 1996, we agree. Moreover, improperly labeling "paragraphs" as "counts" does not transform them into "counts." The portions of an indictment that allege different methods of committing the same offense remain "paragraphs" regardless of the terms used in preparing the indictment. *See Dalton,* 898 S.W.2d at 426; *Gahl v. State,* 721 S.W.2d 888, 895 (Tex.App.—Dallas 1986, pet. ref'd).

Thus, Whiteside is charged in separate "paragraphs" with the aggravated sexual assault of M.W., on or about April 1, 1996, by four different methods: (1) contacting M.W.'s sexual organ with Whiteside's mouth; (2) penetrating M.W.'s mouth with Whiteside's sexual organ; (3) penetrating M.W.'s anus with his penis; and (4) penetrating M.W.'s anus with Whiteside's finger. The court instructed the jury on the law concerning these methods of committing aggravated sexual assault. The jury then returned a general verdict of guilty.

Alternate pleading of different methods of committing an offense may be charged in one indictment. *See, e.g., Kitchens v. State,* 823 S.W.2d 256, 258 (Tex.Crim.App.1991), *cert. denied,* 504 U.S. 958, 112 S.Ct. 2309, 119 L.Ed.2d 230 (1992); *Dalton,* 898 S.W.2d at 427. Moreover, an indictment may allege different methods of committing the same offense in the conjunctive, but the jury may properly be charged in the disjunctive. *See, e.g., Kitchens,* 823 S.W.2d at 258; *Dalton,* 898 S.W.2d at 427. Where alternative theories of committing the same offense are submitted to the jury disjunctively, it is proper for the jury to return a general verdict if there is sufficient evidence to support a conviction under any of the theories alleged. *See Aguirre,* 732 S.W.2d at 326.

In the present case, Whiteside does not challenge the sufficiency of the evidence on any of the four methods charged. And the jury was charged in the disjunctive:

> A person commits the offense of aggravated sexual assault of a child if he intentionally or knowingly causes the penetration of the anus or female sexual organ of a child by *any* means, *or* causes the penetration of the mouth of a child by the sexual organ of the actor, *or* causes the sexual organ of a child to contact or penetrate the mouth, anus or sexual organ of another person including the actor. [Emphasis added.]

That Whiteside was convicted for the single offense of aggravated sexual assault of a child is reflected by the submission of a general verdict form that provided: "We, the jury, find the defendant ... guilty of the *offense* of aggravated sexual assault of a child, as charged in the indictment." [Emphasis added.] Additionally, the trial court's charge at punishment begins with "You have found the defendant ... guilty of the *offense* of aggravated sexual assault of a child as alleged in the indictment." [Emphasis added.] The singular word "offense" indicates that the court was submitting separate methods of committing the same offense, not separate offenses, for the jury's consideration. Moreover, the judgment reflects that Whiteside was given a single life sentence, not four concurrent sentences for separate offenses. The jury's verdict represents a conviction and punishment for one offense, not several convictions and punishments for several offenses.

However, the trial court's judgment states: "GENERAL VERDICT OF GUILTY COUNTS ONE, TWO, THREE, FOUR." This does not properly reflect the

jury's finding because it states Whiteside was convicted and punished on four "counts." The judgment is more specific than the jury's verdict, and is, therefore, incorrect. We have the power to reform incorrect judgments. *See* TEX.R.APP. P. 80(b)(2); *Bigley v. State,* 865 S.W.2d 26, 27–28 (Tex.Crim.App. 1993). Where the judgment improperly reflects the findings of the jury, reformation of the judgment is the proper remedy. *See Aguirre,* 732 S.W.2d at 327; *Dalton,* 898 S.W.2d at 427.

In our opinion in *Dalton,* we properly characterized similar allegations in the indictment as "paragraphs." *See Dalton,* 898 S.W.2d at 426. However, we then reformed the judgment to strike the second and third "counts," relying on *Ex parte Drake. See id.* at 427 (citing *Ex parte Drake,* 883 S.W.2d 213, 214 (Tex.Crim.App.1994)). It appears our reliance was misplaced. In *Drake,* the State had improperly joined two counts in the same indictment and *Drake* was convicted and sentenced on both counts. *Drake,* 883 S.W.2d at 214. Conversely, the Court of Criminal Appeals has said that, where an indictment does not allege different offenses but only alleges different ways of committing the same offense, a general jury verdict is proper. *See Aguirre,* 732 S.W.2d at 326. *Aguirre* controls the fact situation in the present case, and we disapprove our opinion in *Dalton* to the extent that it is inconsistent with this holding.

Accordingly, we reform the trial court's judgment of Whiteside to read: "GUILTY." Further, we overrule Whiteside's points of error one, two, and three, and we affirm as reformed the trial court's judgment of Whiteside.

### CONCLUSION

The trial court did not abuse its discretion in denying Whiteside and Watkins's motions to sever because neither Whiteside nor Watkins met the burden of offering evidence showing they would be prejudiced by joint trials and because any argument that the offenses were improperly joined was waived because that theory may not be raised for the first time on appeal. Furthermore, the extraneous offense testimony that Watkins complains of concerned Whiteside's prior criminal conduct and thus was not extraneous offense evidence as to Watkins. Additionally, the jury arguments complained of by Watkins were proper as summations of the evidence and reasonable deductions from the evidence. Admission of the unadjudicated extraneous offense evidence offered against Whiteside at punishment was within the scope of the trial court's discretion. Moreover, Whiteside waived any argument that the extraneous offenses were not proven beyond a reasonable doubt by failing to object on that basis at trial. Finally, although the trial court's judgment erroneously provides that Whiteside was convicted on four "counts" of aggravated sexual assault of a child, Whiteside was indicted, convicted, and punished for the single offense of aggravated sexual assault of a child.

Accordingly, we affirm the judgment of the trial court in Watkins's case, and we reform the judgment of the trial court in Whiteside's case to properly reflect the jury's findings and affirm it as reformed.