# NO. 12-07-00304-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *ROBERT KEVIN CYPHERS,*<br>*APPELLANT* | § | *APPEAL FROM THE SEVENTH* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *SMITH COUNTY, TEXAS* |

---

## *MEMORANDUM OPINION*

Robert Kevin Cyphers appeals from his conviction of three counts of aggravated sexual assault. In thirteen issues, Appellant argues that the indictment alleged only one offense, that the trial court should have allowed the results of a polygraph examination into evidence, that the evidence was insufficient, and that his convictions constitute double jeopardy. We affirm.

### Background

Appellant's eight year old stepdaughter wrote "My dad sexually abuses me" on a note card at school. A classmate took the note to the teacher, who referred the matter to the school counselor. This began an investigation that culminated in Appellant's being indicted for the offenses of aggravated sexual assault and indecency with a child.

The indictment alleged, in relevant part, that Appellant intentionally or knowingly caused the penetration of the girl's sexual organ with his finger, that Appellant intentionally or knowingly caused contact with or the penetration of the girl's mouth with his sexual organ, and that Appellant intentionally or knowingly caused the girl's sexual organ to contact his mouth. The indictment also alleged, in three different sections, that Appellant committed the offense of indecency with a child.

Prior to trial, Appellant asked the trial court to dismiss the indictment, arguing that the indictment was not organized into counts and he could not determine which offense or offenses were alleged. Alternately, Appellant argued that the indictment charged him with a single offense. The trial court accepted the State's position that the indictment charged Appellant with independent offenses or counts of aggravated sexual assault and indecency with a child.

The State did not proceed on the allegations of indecency with a child, and Appellant was convicted at trial of the three aggravated sexual assault offenses. The jury assessed punishment at twelve years of imprisonment in each case. The trial court ordered that the sentences be served consecutively. This appeal followed.

## THE INDICTMENT

In his first, second, fourth, and fifth issues, Appellant argues that the indictment alleged a single offense and that the trial court erred in entering judgments on three counts of aggravated sexual assault. Specifically, Appellant argues that the three convictions violate his right to due process and violate his right to be indicted by a grand jury.

### Applicable Law

Felony charges in Texas are brought by indictment. TEX. CONST. art. I, § 10. An indictment may allege more than one offense if the offenses are part of the same criminal episode. TEX. CODE CRIM. PROC. ANN. art. 21.24 (Vernon 1989). A criminal episode includes offenses committed in the same transaction, but it also includes the repeated commission of the same or similar offenses. *See* TEX. PENAL CODE ANN. § 3.01 (Vernon 2003). When two or more offenses are alleged in a single indictment, the individual offenses are alleged as separate counts. *See* TEX. CODE CRIM. PROC. ANN. art. 21.24(a) (Vernon 1989). Counts may also contain separate paragraphs charging the same offense, but each paragraph may charge only one offense. *Id.* art. 21.24(b) (Vernon 1989). There may be only one conviction for each count in an indictment. *Martinez v. State*, 225 S.W.3d 550, 554 (Tex. Crim. App. 2007).

### Analysis

Resolving these issues turns on whether the indictment alleges individual counts or paragraphs that are part of a single count. The reason there is a dispute at all is because the sections

2

in the indictment are not labeled, either as counts or paragraphs. If a single count is alleged, only one conviction is permissible. *See Martinez*, 225 S.W.3d at 555. The issue of actual notice is not part of this problem. The issue was litigated prior to trial, and Appellant was aware that the trial court would be submitting the allegations as individual counts. Instead, the question is whether three convictions were authorized by the indictment.

As a general rule, a "count" is used to charge the offense itself and, if present, a "paragraph" is that portion of a count which alleges the method of committing the offense. *See Fowler v. State*, 240 S.W.3d 277, 280 (Tex. App.–Austin 2007, pet. ref'd). The substance of the allegation rather than the label it is given determines whether an allegation is a count or a paragraph. *See Watkins v. State*, 946 S.W.2d 594, 601 (Tex. App.–Fort Worth 1997, pet. ref'd). Determining whether a section is a paragraph or a count can be complicated when the indictment mislabels paragraphs as counts[1] or, as in this case, does not label them at all. A determination can be made if there are contextual clues. In *Martinez*, for example, the court considered the first section to be a count despite its not being labeled as such. *See Martinez*, 225 S.W.3d at 552. The court had little difficulty making this conclusion because counts II and III were so labeled and there were unlabeled, indented subsections within the counts that were paragraphs. *Id.* at 552 n.1.

In this case, the conclusion is less obvious. The original indictment alleged three acts that would be aggravated sexual assault along with three acts that would be indecency with a child. The sections in the indictment that allege aggravated sexual assault in this case could be paragraphs of a single count, as in *Martinez*, or could be individual counts, as in *Vick v. State*, 991 S.W.2d 830, 833–34 (Tex. Crim. App. 1999) (cited in *Huffman v. State*, 267 S.W.3d 902, 906 (Tex. Crim. App. 2008)).[2] Each of the six sections are treated equally in the indictment. Each alleges all of the elements of an offense. We conclude that the sections are counts because they charge different offenses. Paragraphs belong to counts, and the sections cannot all be paragraphs of the same count

---

[1] *See*, *e.g.*, *Dalton v. State*, 898 S.W.2d 424, 426 (Tex. App.–Fort Worth 1995, pet. ref'd) (court treated sections as paragraphs even though they were denominated as counts); *Watkins v. State*, 946 S.W.2d 594, 602 (Tex. App.–Fort Worth 1997, pet. ref'd) (disapproving *Dalton* but treating sections as paragraphs despite their being denominated as counts).

[2] The indictment does not allege different means of committing a single act. *See*, *e.g.*, *Cook v. State*, 192 S.W.3d 115, 119 (Tex. App.–Houston [14th Dist.] 2006, no pet.) (penetration by finger or unknown object).

3

because the indecency sections do not charge aggravated sexual assault. *See* TEX. CODE CRIM. PROC. ANN. art. 21.24(b) ("A count may contain as many separate paragraphs charging the <u>same</u> offense as necessary. . . .") (emphasis added).

Furthermore, although less persuasive, the sections cannot be paragraphs because there would be no "counts" for them to be a part of. The only way to view the indictment as Appellant suggests would be to group the aggravated sexual assault allegations into a single count and the indecency with a child allegations into another, and then suppose that there are two overriding "counts" for each set of paragraphs. This is far more artificial than treating the indictment as alleging six counts.[3] The substance controls, *see* **Watkins**, 946 S.W.2d at 601, and therefore we hold that the six sections in the indictment are individual counts.[4]

Because we hold that the indictment alleged individual counts, we also hold that Appellant was not denied his due process right to notice of the charges against him. *See* **Martinez**, 225 S.W.3d at 554. Furthermore, Appellant was not denied his right to grand jury screening. *See* **id.** (citing **Flowers v. State**, 815 S.W.2d 724, 729 (Tex. Crim. App. 1991)). In **Flowers**, the court considered whether an amendment to the indictment charged the defendant with a different or additional offense beyond what the grand jury had alleged. *See* **Flowers**, 815 S.W.2d at 729; *see also* TEX. CODE CRIM. PROC. ANN. art. 28.10 (Vernon 2006). There was no amendment to the indictment in this case, nor were there any additional or different offenses alleged by the court's interpretation of the indictment. The grand jury passed on all of the allegations in the indictment. The trial court's finding that the indictment alleged individual counts did not enlarge or alter the factual allegations made by the grand

---

[3] The State argues that the sections are counts because it "made it clear" to Appellant that it intended to proceed on individual counts. The State provides no authority for the proposition that its intent controls in this kind of situation. In this case, we could determine that counts were alleged because offenses from different code sections were alleged. It would have been more difficult to determine what the indictment authorized if the same offense had been alleged in each section.

[4] In his reply brief, Appellant argues that article 21.24(a) creates something he calls an "express-count" rule, which requires that multiple offenses be alleged with "each offense stated in a separate count." We do not agree that this language requires that counts be labeled as such. Furthermore, Appellant's argument, based on **Martinez**, that unlabeled sections must be paragraphs misapprehends the distinction the court was drawing in that case. In **Martinez**, the unlabeled sections were indented, apparently were subordinate to the "counts," and alleged varying manner and means of committing the offenses. **Martinez**, 225 S.W.3d at 551 n.1. By contrast, the six sections in the indictment in this case were not contextually arrayed as paragraphs and did not allege varying manner and means of committing the same offense.

jury in its indictment.  We overrule Appellant's first, second, fourth, and fifth issues.[5]

## CUMULATION OF SENTENCES

In his sixth issue, Appellant argues that the trial court abused its discretion by ordering that the sentences for the three offenses be served consecutively.  In his seventh issue, which is a subpart of his sixth issue, Appellant argues that he is entitled to credit for time served against all of his sentences if his sentences are to be served concurrently.

Consecutive sentences are permissible for those convicted of multiple aggravated sexual assault offenses when the victim is younger than the age of seventeen, even if the offenses are tried in a single proceeding.  *See* TEX. PENAL CODE ANN. § 3.03 (a), (b)(2)(A) (Vernon Supp. 2008); TEX. CODE CRIM. PROC. ANN. art. 42.08(a) (Vernon 2006).  Appellant argues that there was only one offense, and therefore there should be one sentence or, in the alternative, that the trial court abused its discretion when it cumulated the sentences.  We held in the previous section that three offenses were alleged.  Therefore, three convictions were possible.  *See Martinez*, 225 S.W.3d at 555 (one conviction per count).  The trial court was authorized to cumulate the sentences because the offenses were aggravated sexual assault of a victim younger than seventeen.  *See* TEX. PENAL CODE ANN. § 3.03 (a), (b)(2)(A).

We review a trial court's decision to cumulate sentences for an abuse of discretion.  TEX. CODE CRIM. PROC. ANN. art. 42.08(a); *Nicholas v. State*, 56 S.W.3d 760, 764 (Tex. App.–Houston [14th Dist.] 2001, pet. ref'd).  As a practical matter, however, an abuse of discretion generally will be found only if the trial court imposes consecutive sentences where the law requires concurrent sentences, where the court imposes concurrent sentences but the law requires consecutive ones, or where the court otherwise fails to observe the statutory requirements pertaining to sentencing. *Nicholas*, 56 S.W.3d at 765.  None of those conditions are present here.  Because of the nature of the offenses, the trial court was permitted to cumulate the sentences.  We overrule Appellant's sixth issue.  Because we hold that consecutive sentences were permissible, we do not reach Appellant's

---

[5] Appellant's title for his third issue suggests that he intends to argue that his convictions violate the Double Jeopardy Clause of the Sixth Amendment.  He argues the first five issues together but does not address double jeopardy in that section beyond a single reference.  Appellant addresses double jeopardy in his twelfth issue, and we address it there as well.

seventh issue regarding a remedy.[6]

<br>

## RESULTS OF POLYGRAPH EXAMINATION

In his eighth and ninth issues, Appellant argues that the trial court erred by not allowing the results of a polygraph examination into evidence. Appellant argues that he provided a foundation for the introduction of novel scientific evidence and the trial court should have allowed him to offer the results of a polygraph examination that he had arranged to be conducted.

**Applicable Law**

As Appellant acknowledges, the court of criminal appeals has held, and recently reaffirmed, that polygraph evidence is inadmissible for all purposes. *Ross v. State*, 133 S.W.3d 618, 626 (Tex. Crim. App. 2004). Appellant begins his arguments by citing decisions that he argues show that polygraph has gained scientific acceptance. The cited authority's support for this position is questionable. For example, Appellant cites *United States v. Scheffer*, 44 M.J. 442 (1996), for the proposition that the military rule of evidence banning polygraph results was stricken. However, as Appellant notes, that decision was reversed. *See United States v. Scheffer*, 523 U.S. 303, 317, 118 S. Ct. 1261, 1269, 140 L. Ed. 2d 413 (1998). Indeed, the Court in *Scheffer* cites Texas as one of the states that has a categorical rule against the introduction of polygraph results. *Id.*, 523 U.S. at 311, 118 S. Ct. at 1266 (citing *Perkins v. State*, 902 S.W.2d 88, 94–95 (Tex. Crim. App 1995)). In a concurring opinion, Justice Kennedy writes that a per se exclusion of polygraph results is unwise and notes a tension between a categorical exclusion of such evidence and means by which novel scientific evidence is ordinarily evaluated. *Id.*, 523 U.S. at 318, 118 S. Ct. at 1269 (Kennedy, J.,

<br>

---

[6] Appellant's heading for his seventh issue is "If the Court of Appeals Orders Cyphers' Three Sentences to Run Concurrently, Then It is Necessary to Revise Cyphers' Credit for Back Jail Time to All Three Sentences in Accordance With Article 42.03, § 2(a) of the Code of Criminal Procedure." In the body of his argument, however, Appellant seems to suggest that he is entitled to additional credit even if the cumulation order is proper. Neither party has provided persuasive authority as to how credit time is to be calculated in such a circumstance. Appellant made the same request, credit for 188 days on each sentence, at the sentencing hearing. The trial court considered it a novel argument and invited Appellant to submit authority to support his position. The trial court apparently agreed with Appellant and included 188 days of jail credit on each sentence when it prepared the judgments. Even if we determined Appellant was entitled to credit on each case for his pretrial incarceration, *see*, *e.g.*, *Ex parte Hannington*, 832 S.W.2d 355, 356 (Tex. Crim. App. 1992) ("double credit"), we could do no more than amend each judgment to reflect 188 days of jail credit. The judgments presently reflect that amount of jail credit. *See also Ex parte Wickware*, 853 S.W.2d 571, 573 (Tex. Crim. App. 1993) ("TDCJ is required to award inmates in its custody pre–sentence jail time credits as reflected in the judgment . . . .").

concurring) (citing ***Daubert v. Merrell Dow Pharms., Inc.***, 509 U.S. 579, 587, 113 S. Ct. 2786, 2793–94, 125 L. Ed. 2d 469 (1993)).

In ***Ross***, the Texas Court of Criminal Appeals appeared to accept the argument that polygraph evidence could be admissible if it met the ***Daubert***/***Kelly***[7] standard for scientific evidence, but found the evidence insufficient in that case. ***Ross***, 133 S.W.3d at 625–26. In ***United States v. Posado***, 57 F.3d 428, 434 (5th Cir. 1995), the Fifth Circuit held that a per se rule was inappropriate, and that a trial court must make a judgment about the admissibility of polygraph evidence like any other proposed scientific evidence that has not had general acceptance.

To be admissible, novel scientific evidence must be derived from a scientific theory, the underlying scientific theory must be valid, the technique applying the theory must be valid, and the technique must have been properly applied on the occasion in question. ***Kelly v. State***, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992). Factors that could affect a trial court's determination of reliability include, but are not limited to, the following: (1) the extent to which the underlying scientific theory and technique are accepted as valid by the relevant scientific community, if such a community can be ascertained, (2) the qualifications of the expert testifying, (3) the existence of literature supporting or rejecting the underlying scientific theory and technique, (4) the potential rate of error of the technique, (5) the availability of other experts to test and evaluate the technique, (6) the clarity with which the underlying scientific theory and technique can be explained to the court, and (7) the experience and skill of those who applied the technique on the occasion in question. ***Id.***

The proponent of novel scientific evidence must show, by clear and convincing evidence, that the evidence is reliable and therefore relevant. ***Id.***; *see also* TEX. R. EVID. 702 ("If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise."). We review a trial court's ruling on the admissibility of scientific expert testimony under an abuse of discretion standard. *See* ***Russeau v. State***, 171 S.W.3d 871, 881 (Tex. Crim. App. 2005).

---

[7] ***Kelly v. State***, 824 S.W.2d 568 (Tex. Crim. App. 1992).

**Analysis**

The trial court did not rely on a per se rejection of polygraph testing. Instead, the court permitted Appellant to offer evidence to support his contention that the results of his polygraph examination should be admitted. Appellant offered legal authority to the court to support his position. He also offered testimony of his polygraph examiner.

The polygraph examiner's testimony can be divided into several areas. One area is his experience. Specifically, he testified that he had conducted approximately four hundred polygraph examinations a year for the last fifty years,[8] that he had worked for the police department in Dallas for twenty years, and conducted polygraph examinations for the Tyler and Longview police departments for fifteen years. He also testified that he received training from the Texas Department of Public Safety and that he was licensed[9] by the State of Texas to perform polygraph examinations.

Another area of the witness's testimony was about Appellant's performance on the test. Appellant passed, according to the witness, and it was the witness's opinion that it was rare for a person charged with a sex crime involving a child to pass the test. Finally, the witness testified about the scientific basis of the polygraph examination. Specifically, he testified that the test was accurate, scientifically valid, and subject to peer review.

We conclude that the trial court did not abuse its discretion by not allowing the evidence. First, the legal authorities submitted by Appellant are not more compelling than the authorities found to be unpersuasive on this issue in ***Ross***. *See **Ross***, 133 S.W.3d at 625–26. Appellant offered no literature supporting the theory or technique. The witness testified that the theory behind polygraph examinations was scientifically valid. But his testimony does not stand up to scrutiny. The evidence on the issue of scientific validity came when he was asked if he had any reason to believe that the polygraph examination he did was not scientifically valid. He testified that he did not. He also testified that there was ninety-five percent accuracy in the test, but the basis for this conclusion was unclear—he said that was the number "thrown out in the schools."

---

[8] The witness testified that he had conducted more than 20,000 polygraph examinations since 1957.

[9] *See* TEX. OCC. CODE ANN. §§ 1703.001–.005 (Vernon 2004). Texas regulates a wide range of professional activities from hypnotherapy provided by a psychologist, 22 TEX. ADMIN. CODE § 465.5 (2007), to boxing, TEX. OCC. CODE ANN.§ 2052.002 (Vernon Supp. 2008), and midwifery, 22 TEX. ADMIN. CODE § 831.11 (2007).

The witness's testimony as to how well Appellant did on the test and his experience in giving the test does not show that the theory behind the technique is valid. His performance of the test for police departments and his licensing by the state auger in the direction of scientific acceptability, but not persuasively. Similarly, the witness's testimony that his reading of the results could be reproduced by another professional–he called this peer review–is consistent with accepted scientific practices, but does not show that the test is reliable or that the scientific theory behind it is valid.

Appellant offered little evidence to support a conclusion that polygraph evidence was based on a valid underlying scientific theory or that the examiner's conclusions would be relevant. He certainly did not advance the argument beyond those previously rejected by other courts. Accordingly, we hold that the trial court did not abuse its discretion when it refused to allow Appellant to present polygraph evidence. We overrule Appellant's eighth and ninth issues.

**SUFFICIENCY OF THE EVIDENCE**

In his tenth and eleventh issues, Appellant argues that the evidence is legally and factually insufficient to support the verdict. In his thirteenth issue, Appellant argues that he is actually innocent and that his conviction violates the Due Process Clause of the Fourteenth Amendment and the Cruel and Unusual Punishment Clause of the Eighth Amendment.

**Standard of Review**

The due process guarantee of the Fourteenth Amendment requires that a conviction be supported by legally sufficient evidence. *See **Jackson v. Virginia***, 443 U.S. 307, 315–16, 99 S. Ct. 2781, 2786–87, 61 L. Ed. 2d 560 (1979); ***Ross v. State***, 133 S.W.3d 618, 620 (Tex. Crim. App. 2004); ***Willis v. State***, 192 S.W.3d 585, 592 (Tex. App.–Tyler 2006, pet. ref'd). Evidence is not legally sufficient if, when viewing the evidence in a light most favorable to the verdict, no rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See **Jackson***, 443 U.S. at 319, 99 S. Ct. at 2789; *see also **Rollerson v. State***, 227 S.W.3d 718, 724 (Tex. Crim. App. 2007).

While legal sufficiency review is all that is required by the U.S. Constitution, the Texas Court of Criminal Appeals has determined that the Texas Constitution requires further review of the factual sufficiency of the evidence. ***Clewis v. State***, 922 S.W.2d 126, 129–30 (Tex. Crim. App. 1996).

Factual sufficiency review differs from legal sufficiency review only slightly. *See Marshall v. State*, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006). In a factual sufficiency review, we review the evidence without the light most favorable to the verdict and we are authorized, "albeit to a very limited degree," to disagree with the jury's resolution of contested factual issues. *See id*.; *Watson v. State*, 204 S.W.3d 404, 414, 417 (Tex. Crim. App. 2006). In a review of the factual sufficiency of the evidence, we will conclude that the evidence is insufficient only if the great weight and preponderance of the evidence contradicts the jury's verdict or the verdict is clearly wrong and manifestly unjust. *See Rollerson*, 227 S.W.3d at 724; *Watson*, 204 S.W.3d at 417.

Under either standard, our role is that of appellate review, and the fact finder is the principal judge of the weight and credibility of a witness's testimony. *Wesbrook v. State*, 29 S.W.3d 103, 111–12 (Tex. Crim. App. 2000). The fact finder may choose to believe all, some, or none of a witness's testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986).

For purposes of the aggravated sexual assault statute, a child is a person who is younger than seventeen years of age and not the spouse of the actor. *See* TEX. PENAL CODE ANN. §§ 22.021(b), 22.011(c)(1) (Vernon Supp. 2008). For count I, the State was required to prove that Appellant intentionally or knowingly caused the penetration of the sexual organ of a child. *See id.* § 22.021(a)(1)(B)(i). For count II, the State was required to prove that Appellant intentionally or knowingly caused his sexual organ to contact or penetrate the mouth of the child. *Id*. § 22.021(a)(1)(B)(ii), (v). For count III, the State was required to prove that Appellant intentionally or knowingly caused the child's sexual organ to contact his mouth. *Id.* § 22.021(a)(1)(B)(iii).

## Analysis

Appellant acknowledges the relevant standards of review. However, he urges that we adopt a new standard of review, which he calls "compelling evidence of innocence." Under this standard, Appellant suggests that a reviewing court should weigh evidence ruled to be inadmissible[10] but that is, as he describes it, compelling evidence of innocence. Alternately, Appellant suggests that we

---

[10] Appellant also urges the court to consider evidence of "intense family litigation" around the time of the report. As support for this contention, he offers the docket numbers of the civil actions and reports on the status of those cases. We may not consider factual assertions that are outside the record. *Whitehead v. State*, 130 S.W.3d 866, 872 (Tex. Crim. App. 2004).

adopt an actual innocence standard used in postconviction collateral attacks on convictions. Specifically, under certain conditions, a convicted person can obtain relief in a habeas corpus proceeding if he can demonstrate that "new facts unquestionably establish [his] innocence." *See Ex parte Elizondo*, 947 S.W.2d 202, 209 (Tex. Crim. App. 1996) (citing *Schlup v. Delo*, 513 U.S. 298, 315–18, 115 S. Ct. 851, 861–62, 130 L. Ed. 2d 808 (1995)). This standard has been modified and adopted by the legislature as a threshold standard for review of subsequent applications for writ of habeas corpus. *See* TEX. CODE CRIM. PROC. ANN. art. 11.071, § 5(a)(2) (Vernon Supp. 2008); *Ex parte Reed*, 271 S.W.3d 698, 733 (Tex. Crim. App. 2008); *see also* TEX. CODE CRIM. PROC. ANN. art. 11.07, § 4(e)(2) (Vernon Supp. 2008).

We decline to adopt either standard for direct appeal.[11] The standards of review for legal and factual sufficiency are well established and include consideration of evidence that contradicts the verdict. *See*, *e.g.*, *Rollerson*, 227 S.W.3d at 724 ("Both legal and factual sufficiency standards require the reviewing court to consider all of the evidence."). And Appellant's proposal that we consider evidence ruled inadmissible or evidence not offered at trial is antithetical to appellate review on direct appeal, which reviews the evidence admitted at trial. *See*, *e.g.*, *Ex parte Torres*, 943 S.W.2d 469, 475 (Tex. Crim. App. 1997) (record on direct appeal inadequate to develop certain claims).

With respect to the evidence admitted at trial, Appellant argues that the evidence is insufficient to show penetration of the child's sexual organ or contact between Appellant's mouth and the child's sexual organ. The child testified that Appellant put his finger in and his mouth on her "heinie." Appellant argues that "heinie" means buttocks and that the State failed to prove that the witness was referring to her sexual organ. Appellant further argues that her testimony that Appellant put his finger into her "heinie" was insufficient to show penetration because she may have

---

[11] Appellant's argument that he is actually innocent and therefore his conviction violates the Fourteenth and Eighth Amendments to the United States Constitution is based upon *Herrera v. Collins*, 506 U.S. 390, 417, 113 S. Ct. 853, 869, 122 L. Ed. 2d 203 (1993), in which the court, for the sake of argument, assumed that a defendant should not be executed if a "truly persuasive demonstration of 'actual innocence' [was] made after trial." The Court went on to conclude that the threshold for such a showing would be "extraordinarily high" and that it was not met in that case. *Id*. This is not a postconviction proceeding or a death penalty case. However, even if we make essentially the same assumption, for the sake of argument, we reach the same conclusion. Appellant has not made a persuasive demonstration of "actual innocence."

meant that his finger went "into her pants or underwear" or touched the outside of her sexual organ.

Appellant's construction of the witness's testimony is not particularly plausible. The girl said that she urinated from her "heinie" and differentiated it from her "booty," which she described as her backside. Furthermore, she testified that it hurt when Appellant put his finger in her "heinie," and there was medical evidence that she had thinning to and was missing pieces of her hymen, which was consistent with the described assault. In the context of sexual assault, proof of the slightest penetration of any part of the female sexual organ is sufficient to meet the requirement of "penetration." *See Nilsson v. State*, 477 S.W.2d 592, 595 (Tex. Crim. App. 1972); *see also Vernon v. State*, 841 S.W.2d 407, 409 (Tex. Crim. App. 1992). There need not be proof of penetration of the vagina, and proof of penetration may be circumstantial. *See Vernon*, 841 S.W.2d at 409–10; *Nilsson*, 477 S.W.2d at 595–97. The witness's testimony that Appellant put his finger into the part of her body where she urinates and that it hurt when he did so is sufficient for a rational jury to conclude that Appellant penetrated her sexual organ with his finger. Her testimony that he put his mouth on her "heinie" is sufficient for a rational jury to conclude that he touched her sexual organ with his mouth.[12]

Appellant also argues that the evidence is insufficient because the evidence contradicting the verdict outweighs the evidence supporting it. The evidence supporting the verdict includes the complaining witness's testimony that the assaults happened, her statements to others about the assaults, and the results of a medical examination that were consistent with the described assault. Furthermore, the evidence showed that Appellant, who was the girl's stepfather, had signed her out of school early eleven times between August and her report of the assault in October. She said that the assaults occurred after school.

The evidence contrary to the verdict includes Appellant's testimony that he did not assault the girl. Additionally, the girl's report of the assault came a week or two after the girl's mother told the child that she herself had been a victim of sexual assault. Furthermore, the complaining witness used more formal language than an eight year old might be expected to use. For example, her note reporting the assault stated, "My dad sexually abuses me." The medical evidence was not conclusive

---

[12] Appellant concedes that the child's testimony that his penis touched her mouth "may satisfy" the legal sufficiency standard for count II.

that the girl had been sexually assaulted. Finally, the complaining witness's sister, who is a year older than the witness, testified that the complaining witness did not always tell the truth, that Appellant had never sexually assaulted her, the sister of the witness, and that she was present during the times after school when Appellant was supervising the girls and did not see a sexual assault occur.

We hold that the evidence is sufficient. The complaining witness's testimony is evidence of the assaults, and it is supported by corroborating evidence. To the extent that evidence contradicts the verdict or calls it into the question, we are satisfied that a rational jury could have found the essential elements of the offense beyond a reasonable doubt and that the evidence does not contradict the verdict or show that the verdict is wrong or unjust. We overrule Appellant's tenth, eleventh, and thirteenth issues.


### DOUBLE JEOPARDY

In his third and twelfth issues, Appellant argues that the Double Jeopardy Clause of the Fifth Amendment prohibits more than one conviction in this case because he was charged with only one crime or because the three offenses occurred in a single transaction.

As is relevant here, the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution prohibits multiple punishments for the "same offence." *See* U.S. CONST. amend V; *Villanueva v. State*, 227 S.W.3d 744, 747 (Tex. Crim. App. 2007). We held in our analysis of Appellant's first set of issues that the indictment alleged three independent counts or three offenses. As such, three convictions were possible, and the Double Jeopardy Clause is not implicated, even if the offenses occurred during a single transaction. *See Vick*, 991 S.W.2d at 834 (". . . one transaction of aggravated sexual assault can result in the commission of separate statutory offenses . . . ").

As the court observed in *Vick*, and has recently reaffirmed, the legislature intended to allow multiple punishments for multiple violations of the aggravated sexual assault statute. *See Huffman v. State*, 267 S.W.3d 902, 906 (Tex. Crim. App. 2008); *see also Pizzo v. State*, 235 S.W.3d 711, 718 (Tex. Crim. App. 2007) (Indecency with a child offense, like aggravated sexual assault, allows for multiple convictions for individual violations of different parts of the statute even when committed

13

during the same transaction.).[13]  The Fifth Amendment's multiple punishments prohibition is violated only when a defendant "is convicted of more offenses than the legislature intended." *See Saenz v. State*, 166 S.W.3d 270, 272 (Tex. Crim. App. 2005).  The three acts the jury found Appellant had committed were individual violations of the statute.  Consistent with *Vick*, Appellant was not found guilty of more offenses than the legislature intended.  Accordingly, Appellant's three convictions do not constitute double jeopardy.  We overrule Appellant's third and twelfth issues.

## DISPOSITION

Having overruled Appellant's thirteen issues, we *affirm* the judgment of the trial court.


   BRIAN HOYLE   
Justice


Opinion delivered March 11, 2009.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*


(DO NOT PUBLISH)

---

[13] The legislature did not provide for multiple punishments for lesser offenses that are subsumed into a greater offense.  *Patterson v. State*, 152 S.W.3d 88, 92 (Tex. Crim. App. 2004).  That issue is not present in this case.