02-10-400-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-10-00400-CR

 

 


 
 
 Jimmy Noel Hughes
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

 

FROM THE 30th
District Court OF Wichita COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

 

 

          Appellant
Jimmy Noel Hughes appeals his conviction for two counts of aggravated sexual
assault of a child.  We will affirm.

I.  Background
Facts

On
August 22, 2008, “Jane,”[2]
then sixteen years old, and her fifteen-year-old friend “Tammy” were spending
the evening at the home of their friends, Derick Chambers and Joseph Kincaid.  Jane
had been over to Chambers and Kincaid’s house on about ten previous occasions. 
Appellant, whom Chambers and Kincaid had known for only a few weeks, was also
at the house.  Appellant, Chambers, and Kincaid were all about nineteen or
twenty years old.  Jane testified that she had met Appellant about two weeks prior
and that she had ridden in his car “a couple of times before.”

At
Chambers and Kincaid’s house, Jane, Tammy, and the men all began drinking beer
around six or seven o’clock in the evening.  Jane testified that she consumed about
five beers over the course of the night.  Appellant testified that they were also
consuming Jagermeister and drugs, including hydrocodone, Xanax, and marijuana.

Jane
spent most of the night hanging out in the living room with Tammy, Chambers,
and Kincaid.  Appellant stayed outside to work on his stereo.  Jane
occasionally went outside and spoke with Appellant while he worked.

Around
midnight, Chambers and Kincaid went to their bedrooms.  Tammy and Jane went to
sleep sometime after that.  When Jane had spent the night before, she had slept
in the living room.  But because she thought Appellant would be sleeping there,
she went to sleep in Kincaid’s bed.  Tammy went to sleep in Chambers’s
bedroom.  Jane, Chambers, and Kincaid all testified that none of the men were,
or had ever been, in a sexual or romantic relationship with the girls.

A
few hours after falling asleep, Jane woke up to her head hurting.  She went to
the bathroom and discovered that the back of her head was “pouring out blood.” 
She woke everyone else up and asked to be taken to the hospital.  She used
Chambers’s cell phone to call her parents to tell them what had happened.  Jane
told her parents that she was in Henrietta because she did not want them to
know where she had been staying.  Appellant offered to drive her home because Chambers
and Kincaid had to be at work.  Jane used Chambers’s phone again to tell her
parents she had gotten a ride.  No one else at the house recalled seeing any
other injuries to Jane before she left.

On
the way to Jane’s house, Appellant turned off the main road onto a gravel road. 
She claimed that Appellant said he had gone the wrong way and would have to
turn around.  According to Jane, he then stopped the car and hit her “in the
back of [her] head where it was cut open and then hit [her] in [her] nose and
then in [her] mouth a couple of times,” breaking her nose and chipping her
teeth.  He told her to get out of the car and take off her clothes.  Jane
claimed that he sexually assaulted her first by forcing her to perform oral sex
on him and then by penetrating her vaginally with his sexual organ.  Jane did
not testify that Appellant penetrated her anally.

After
he finished, Appellant allowed Jane to get dressed and back in the car.  She
testified that he then said “you know what I gotta do now,” which she took to
mean that he planned to kill her.  Jane promised not to tell anyone about what
happened.  Jane testified that she felt he would “look for [her]” if she told
anyone.  Appellant continued driving Jane home.  When Appellant got near Jane’s
house, Jane got out of the car and “took off running.”  She ran home to her
parents and told them she had just been raped.

Jane’s
parents called 911, and Jane was taken to the hospital where Sexual Assault
Nurse Examiner Erin Wilson performed a sexual assault examination.  Nurse
Wilson noted a head wound; bruises on Jane’s thighs, wrists, and arms; a broken
nose; chipped teeth; anal dilation; and redness around Jane’s anus.  She also
noted that Jane was “very drowsy.”  Swabs from Jane’s rape kit tested positive
for seminal fluid in both her vagina and anus.  DNA tests later matched the
samples to Appellant.

Police
officers went to the hotel where Appellant was staying and found his car in the
parking lot.  Officers saw blood drops on the inside of the passenger door,
which two officers testified revealed a spatter pattern consistent with someone
being punched.  Officers also took Jane to the location of the incident and
found blood on rocks and an oil stain.[3]  A sample of the bloody
rocks tested positive for human blood.

At
trial, Appellant denied Jane’s description of the evening.  He testified that
after everyone else went to sleep, he and Jane kissed on the couch and
performed oral sex on each other in the living room.  They attempted vaginal
intercourse, but Appellant could not maintain an erection.  They then got
dressed and went into Kincaid’s bedroom to find marijuana.  Appellant
claims he told Jane he was not interested in a relationship with her and she
got angry.  He testified that she gouged him in the eye and that, in defending
himself, he swung at her “two or three times,” hitting her in the nose and
mouth.

On
the way to take Jane home, Appellant claims that he missed a turn and swerved,
causing Jane to bang her head on the door.  She became nauseated, he pulled
over so that she could get some fresh air, and she laid on the ground to rest. 
After a few minutes, she got back into the car and they proceeded to her home.[4]

Appellant
was charged with two counts of aggravated sexual assault of a child.  A jury
found Appellant guilty of both charges and assessed a sentence of ninety-nine
years’ imprisonment on each count.  The trial court ordered that the sentences
be cumulated, that is, that they run consecutively. This appeal followed.

II.  Discussion

A.  Sufficiency
of the Evidence

In
his first two issues, Appellant argues that the evidence is insufficient to
support his conviction.  Specifically, he argues that the evidence is
insufficient to support the jury’s findings that he threatened to kill Jane and
that he penetrated Jane’s anus with his sexual organ.

In
our due-process review of the sufficiency of the evidence to support a
conviction, we view all of the evidence in the light most favorable to the
prosecution to determine whether any rational trier of fact could have found
the essential elements of the crime beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton v.
State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).  This standard gives
full play to the responsibility of the trier of fact to resolve conflicts in
the testimony, to weigh the evidence, and to draw reasonable inferences from
basic facts to ultimate facts.  Jackson, 443 U.S. at 319, 99 S. Ct. at
2789; Clayton, 235 S.W.3d at 778.  The trier of fact is the sole judge
of the weight and credibility of the evidence.  See Tex. Code Crim.
Proc. Ann. art. 38.04 (West 1979); Brown v. State, 270 S.W.3d 564, 568
(Tex. Crim. App. 2008), cert. denied, 129 S. Ct. 2075 (2009).  Thus,
when performing an evidentiary sufficiency review, we may not re-evaluate the
weight and credibility of the evidence and substitute our judgment for that of
the factfinder.  Williams v. State, 235 S.W.3d 742, 750 (Tex. Crim. App.
2007).  Instead, we Adetermine whether the
necessary inferences are reasonable based upon the combined and cumulative
force of all the evidence when viewed in the light most favorable to the
verdict.@  Hooper
v. State, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007).  We must presume that
the factfinder resolved any conflicting inferences in favor of the prosecution
and defer to that resolution.  Jackson, 443 U.S. at 326, 99 S. Ct. at
2793; Clayton, 235 S.W.3d at 778.

A
person commits aggravated sexual assault of a child if he intentionally or
knowingly causes the penetration of the anus or sexual organ of a child by any
means and if he, by acts or words, threatens to cause the death, serious bodily
injury, or kidnapping of any person.  Tex. Penal Code Ann. § 22.021(a)(1)(B)(i),
(2)(A)(iii) (West 2011).  Appellant does not now contest any finding that he
penetrated Jane’s sexual organ when she was under the age of seventeen; he
argues only that the evidence does not support a finding that he threatened to
cause her death or that he penetrated her anus.

1.  Threat
to Kill

The
crux of Appellant’s argument that there was insufficient evidence of any threat
he made to kill Jane appears to be that Jane’s testimony was “inconsistent and
implausible.”  He points to the fact that Jane socialized with
“twenty-something male friends” and was a runaway.  He claims that her
testimony of how she got her injuries is not credible, that he presented “the
only plausible explanation for [Jane’s] head wound,” and that his explanation
of her broken nose “is also more plausible than that of the girl.”  However, as
noted above, it is not our task here to re-evaluate the weight and credibility
of the evidence.  See Williams, 235 S.W.3d at 750; see also Karnes
v. State, 873 S.W.2d 92, 96 (Tex. App.—Dallas 1994, no pet.) (noting that
appellant’s argument that the victims’ testimony was not sufficiently credible
was not a complaint of the sufficiency of the evidence).  Appellant attacks the
credibility of the evidence, not its sufficiency.  The jury determines the
credibility of the evidence, not the appellate court.  See Williams, 235
S.W.3d at 750.  After hearing all of the evidence, the jury found Jane’s testimony
credible, and we must accept that finding.[5]  See id.

Jane
testified that after she was raped “[h]e said, you know what I gotta do now. 
Right?  And he was ta[l]king about killing me.  And I promised him that I
wouldn’t say anything to anyone, and I was telling him it’s not his fault and
asked him to take me to my house.”  Jane’s father said that when Jane came home
that morning, she had “terror in her eyes” and was “[s]cared to death.”  The
nurse examiner testified that when she examined Jane, Jane reported, “Back in
the car he said I knew what he had to do like he had to kill me, but I told him
I wouldn’t tell anyone.”

Appellant
argues that Jane did not tell the nurse examiner that Appellant had “actually”
threatened to kill her, only that she perceived his statement to mean that he
intended to kill her.  But the penal code does not require the defendant to
specifically use the word “kill” in order for the statement to be considered a threat. 
See Tex. Penal Code Ann. § 22.021(a)(2)(A)(iii) (stating that a person
may threaten to cause the death, serious bodily injury, or kidnapping of any
person “by acts or words”); Dalton v. State, 898 S.W.2d 424, 429 (Tex.
App.—Fort Worth 1995, pet. ref’d) (“For obvious reasons, we decline to hold
that certain ‘acts or words’ are mutually exclusive to proving different
manners and means of committing a particular offense.”).  “To determine the
presence of the aggravating nature of an offense, a trier of fact is entitled
to consider not only the injuries actually inflicted and the express verbal
threats made by a defendant, but also his objective conduct, i.e., his
acts, words, or deeds.”  Dalton, 898 S.W.2d at 429.  Thus, the jury
could have considered Jane’s testimony that Appellant had punched her so hard
in the face that it broke her nose and chipped her teeth and that he told her
that she knew “what he was going to have to do” and reasonably concluded that
Appellant had threatened Jane with death.  See Mata v. State, 952
S.W.2d 30, 32 (Tex. App.—San Antonio 1997, no pet.) (holding the evidence
sufficient to support the element of threat to kill or seriously injure in an
aggravated sexual assault case where victim was physically injured, restrained,
and gagged but was not verbally threatened); Dalton, 898 S.W.2d at 430 (noting
that use of force can constitute a threat regardless of whether the defendant
threatens to “kill” the victim).  As stated above, the jury assessed the
competing stories of the witnesses and found Jane’s testimony to be credible.  Based
on our review of the evidence, we hold that a rational trier of fact could have
found beyond a reasonable doubt that Appellant threatened to kill Jane.  See
Garcia v. State, 563 S.W.2d 925, 928 (Tex. Crim. App. [Panel Op.] 1978)
(noting that a child victim’s testimony is sufficient to support a conviction
for sexual assault); West v. State, 121 S.W.3d 95, 111 (Tex. App.—Fort
Worth 2003, pet. ref’d) (same).  We overrule Appellant’s first issue.

2.  Anal
Penetration

To
support his contention that the evidence does not support a finding that he
anally penetrated Jane, Appellant points to Jane’s testimony that she did not
remember being penetrated from behind and that she did not remember being
penetrated anally.  However, the DNA test results showed that Appellant’s DNA
was found on the swab of Jane’s anus.  The analyst from the Tarrant County
Medical Examiner’s Office testified that the probability that the DNA found on
the anal swab belonged to someone other than Appellant was about one in 1.1
quintillion (1,100,000,000,000,000,000).  Further, Nurse Wilson testified that
Jane exhibited redness to part of her anus and noted a “very relaxed sphincter
tone.”  Nurse Wilson’s testimony established that her exam required her to
“swab pretty deep inside” Jane’s anus to obtain the sample collected.  Nurse Wilson
further testified that a “relaxed sphincter tone,” also known as “anal
dilation,” and the procedure used to collect the positive DNA sample are consistent
with anal penetration.

The
State’s medical expert, Dr. Leo Mercer, testified that it is possible that
because of her injuries, Jane could have “shut down” and might not have been
aware of everything that was being done to her.  Dr. Mercer explained that it
was “quite common” for a victim to be in such pain that they “may be distracted
from recognizing other sources of discomfort.”[6]  He also testified that
DNA evidence from an anal swab is consistent with anal penetration.

Police
interviewed Appellant three times.  In the first two interviews, Appellant
denied having any sexual relations with Jane on the night of August 22, 2008.  In
the third pretrial interview, Clay County Sherriff Kenny Lemons confronted
Appellant with the DNA test results, and Appellant claimed that he had had
consensual intercourse with Jane on the side of the road and that he had
accidentally contacted her anus when trying to penetrate her vagina.  At trial,
Appellant stated that they had consensual sex at the house and that “when [he]
was trying to put it inside of her that [he was] pretty sure it did come into
contact with her anus.”

After
viewing all of the evidence in the light most favorable to the jury’s verdict,
we hold that a rational trier of fact could have found beyond a reasonable
doubt that Appellant penetrated Jane’s anus with his sexual organ.  See
Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Clayton, 235 S.W.3d at
778.  Accordingly, we hold that the evidence is legally sufficient to support
Appellant’s conviction, and we overrule his second point.

B.  Cumulation
of Sentences

Appellant’s
remaining four issues concern the trial court’s cumulation of Appellant’s two
ninety-nine year sentences.  The State argues that Appellant has not preserved
his complaints for our review because he did not object at trial.  Generally, to
preserve a complaint for our review, a party must have presented to the trial
court a timely request, objection, or motion that states the specific grounds
for the desired ruling if they are not apparent from the context of the
request, objection, or motion.  Tex. R. App. P. 33.1(a)(1); Layton v. State,
280 S.W.3d 235, 238–39 (Tex. Crim. App. 2009).

In
his third issue, Appellant argues that cumulation of the sentences improperly
increased his punishment beyond the statutory maximum in violation of Apprendi
v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348 (2000).  Appellant did not
make an Apprendi objection at trial and thus waived his complaint.  See
White v. State, No. 02-02-00143-CR, 2003 WL 865351, at *2–3 (Tex. App.—Fort
Worth Mar. 6, 2003, pet. ref’d) (mem. op., not designated for publication)
(holding that appellant waived his Apprendi complaint by not objecting
on those grounds at trial); see also Lacy v. State, Nos. 14-05-00775-CR,
14-05-00776-CR, 14-05-00777-CR, 14-05-00778-CR, 2006 WL 2862156, at *2 n.1 (mem.
op., not designated for publication) (Tex. App.—Houston [14th Dist.] Oct. 10,
2006, no pet.) (noting the split in the intermediate courts as to whether a
defendant waives an Apprendi complaint by failing to object in the trial
court).[7] 
We overrule Appellant’s third issue.

Appellant’s
fifth and sixth issues challenge the constitutionality of section 3.03 of the
penal code and article 42.08 of the code of criminal procedure.  See
Tex. Penal Code Ann. § 3.03 (West 2011); Tex. Code Crim. Proc. Ann. art. 42.08
(West 2006).  Specifically, in his fifth issue, Appellant argues that the lack
of guidelines set out in the statutes is a denial of his due process rights.  In
his sixth issue, Appellant argues that section 3.03 is unconstitutionally vague
because it does not state whether the judge or the jury is vested with the
right to determine whether sentences will run consecutively.  See Tex.
Penal Code Ann. § 3.03.

The
court of criminal appeals has held that these types of challenges are ones
which will be forfeited if not preserved in the trial court.  See Karenev v.
State, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009); Carmell v. State,
331 S.W.3d 450, 460 (Tex. App.—Fort Worth 2010, pet. ref’d).  Appellant did not
challenge the constitutionality of either section 3.03 of the penal code or
article 42.08 of the code of criminal procedure in the trial court.  He
therefore has not preserved these complaints for our review.  We overrule
Appellant’s fifth and sixth issues.[8]  

Appellant’s
fourth issue, on the other hand, focuses on the denial of his constitutional
right to a trial by jury, and thus “the general rules for preservation of error
do not apply.”  See Marrow v. State, 169 S.W.3d 328, 330 (Tex.
App.—Waco 2005, pet. ref’d); see also Sanchez v. State, 120
S.W.3d 359, 366 (Tex. Crim. App. 2003) (noting that the constitutional right to
a jury trial is one which cannot be forfeited absent an express waiver).  We
will therefore address that issue.

In
his fourth issue, Appellant argues that cumulating the sentences violated his
right to have a jury assess his punishment.  The court of criminal appeals has
held that a trial court’s order that jury-assessed sentences be served
consecutively does not violate a defendant’s right to a trial by jury because
it is a normative, discretionary function that does not turn on findings of
fact.  Alameda, 235 S.W.3d at 224.; Barrow, 207 S.W.3d at 380. 
We therefore overrule Appellant’s fourth issue.

III.
 Conclusion

          Having
overruled all of Appellant’s issues, we affirm the judgment of the trial court.

 

 

PER CURIAM

 

PANEL: 
GABRIEL,
J.; LIVINGSTON, C.J.; and MEIER, J.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  September 15,
2011








 









[1]See Tex. R. App. P. 47.4.





[2]We use pseudonyms to
protect the complainant’s identity and that of the other minor.





[3]Appellant’s car leaked oil
because of a cracked engine head.





[4]The testimony of Appellant
at trial concerning his sexual encounter with Jane on August 22, 2008, was one
of four different versions told by Appellant at different times.  In his first
statement, Appellant denied ever having sex with Jane.  In his second version,
he acknowledged having sex with her, just not on that date.  After being
confronted with the DNA results, Appellant changed his account to admitting he
had vaginal intercourse with Jane on the side of the road on the night alleged,
yet still denying anal intercourse.





[5]The jury also heard
testimony that Appellant had previously been convicted of felony theft and that
four days before the trial began, he escaped from the Wichita County Jail
Annex.  The jury was free to take this evidence into consideration in
determining Appellant’s credibility.





[6]Jane testified that during
the actual sexual acts, she was in pain in both her head and face.  Her
testimony was not that anal penetration did not occur, but only that she did
not remember it.  She did not remember other significant details as well, such
as whether Appellant ejaculated.  Yet, the DNA evidence establishes that he clearly
did.





[7]Even if Appellant had
preserved his complaint, we note that the court of criminal appeals has held
that the Apprendi line of cases does not apply to a trial court’s
decision to cumulate jury-imposed sentences.  See Alameda v. State, 235
S.W.3d 218, 223–24 (Tex. Crim. App. 2007), cert. denied, 128 S. Ct. 629 (2007).





[8]Even if Appellant’s fifth
and sixth issues had been preserved, we note that both of his issues have been
thoroughly addressed by the court of criminal appeals.  In Barrow v. State,
207 S.W.3d 377, 380–82 (Tex. Crim. App. 2006), the court of criminal appeals
overruled the appellant’s argument that his right to due process had been
violated by allowing the trial judge to decide whether to cumulate sentences. 
The court stated, “[T]he discretionary decision whether to cumulate individual
sentences no more violates due process than does the decision, by judge or
jury, of what particular sentence to impose within the statutorily prescribed
range of punishment.”  Id. at 381.  It also noted that the decision to
cumulate has been assigned by statute to the trial court, not to the jury.  Id.
at 380 (“[T]he Texas Legislature has assigned the decision to cumulate, vel
non, in Section 3.03 of the Penal Code and Article 42.08 of the Code of
Criminal Procedure, to the trial court.”).